## BEARD vs. DEDOLPH and others.

*Bills and Notes, transfer of.   Married women, rights of.   Set-off.   Practice.*

1. The effect of our statute entitled "of the rights of married women" (R. S., ch. 95), is to absolutely remove the disabilities of coverture so far as the wife's separate property is concerned, as well in respect to her dealings with her husband, as with every one else.   As an incident to ownership, she clearly has power to make what disposition of her property she pleases; to sell or exchange it; to invest the proceeds in other property or loan it, receiving securities therefor, and to accept payment in money or other property, the same as any other owner might do.

2. Where a dealing or negotiation between a wife and husband relates to her separate property, and is necessary or proper to its management, she has all the power of a *feme sole*, and may take title to the property *directly* from him the same as if the relation of husband and wife did not exist.

3. In case of a note payable to order, endorsement, as well as delivery, before maturity, is necessary to cut off equities existing between the maker and payee before the delivery.

4. But the *bona fide* holder of such note by delivery only is protected against everything *subsequent* to such delivery, especially if the note be afterward endorsed to him: such endorsement being held to relate back to the time of delivery, as to any equity *outside of the note itself*.

5. In payment of money loaned to him by his wife, a husband delivered to her, without formal endorsement, immediately after it was made, defendants' note payable to his order. After its maturity the wife sold it to the plaintiff; and afterward, before suit, it was endorsed by both husband and wife. *Held*,

(1.) That the wife was competent to take the legal title to the note from the husband.

(2.) That it was valid in her hands, and in the hands of plaintiff, against any offset arising out of indebtedness of the husband to the makers, contracted after the note was transferred to the wife.

6. The answer alleged that the husband became insolvent after the making and before the maturity of the note, and claimed on that ground an equitable set-off of defendants' demands against him. At the trial, evidence of such insolvency, offered by defendants, was rejected. *Held*, That, in the absence of any intimation to the contrary, the circuit court might naturally assume that the evidence was offered merely for the purpose of showing such equitable set-off, and might properly reject it on that ground.

7. Although the general rule that, when evidence offered is competent for any purpose, it should be received, and to reject it would be error, is indisputable; yet, it is the duty of a party, when evidence offered by him is excluded as being inadmissible for the purposes for which it was offered, to inform the court if he had any other purpose in view in making the offer; otherwise its exclusion cannot be alleged for error, on appeal, on the ground that it was admissible for such other purpose.

APPEAL from the Circuit Court for *Waupaca* County.

Action upon a promisory note, dated September 21, 1867, executed by the defendants and payable to the order of S. P.,

in one year after date. The payee, immediately upon the delivery of the note, transferred it to his wife, without formal indorsement, in payment for money loaned by her to him out of her separate estate. The wife retained the note until after its maturity and then transferred it to the plaintiff, and, before suit brought, it was indorsed by both husband and wife.

The answer admits the execution and delivery of the note; denies that it was transferred to the payee's wife before maturity; alleges that such transfer was not made in good faith, but was fraudulent as to the creditors of the payee, and that such payee is insolvent; and that, on the day the note was executed, two of the makers contracted with such payee for a quantity of logs to be subsequently delivered, which he failed to deliver; and, that they afterwards sold goods to such payee and his wife, which the husband agreed should apply on the note in suit; and seeks to recoup the damages for such breach of contract and to set off the price of the goods in this action.

The plaintiff put in a reply denying the counter-claim.

There was testimony tending to show that it was expressly understood by the defendants when they made the note, that it was to be the property of the payee's wife; also that one of the defendants signed merely as surety.

The defendants offered evidence of admissions of the payee of the note in reference to his getting goods from their store before the maturity of the note; also proof of the log contract and of the damages for the breach thereof, and of the insolvency of the payee; all of which was ruled out by the court.

Defendants' motion for a new trial on the minutes of the judge was overruled, and judgment entered for the plaintiff; and the defendants appealed.

*Myron Reed & Gregory & Pinney*, for appellants, contended that the transfer of the note to the payee's wife did not pass the legal title so as to exclude the equities of the makers, founded on the same transaction in which the note had its origin, citing *Putnam vs, Bicknell*, 18 Wis., 333, 1 Parsons on Bills and Notes,

278 ; *Ranger vs. Cary,* 1 Metc., 374; Edwards on Bills and Notes, § 287 ; *Bank vs. Raymond,* 3 Wend., 69 ; *Pease vs. Rush,* 2 Min., 107 ; *Cunliffe vs. Whitehead,* 32 Eng. C. S., 343 ; *Hedges vs. Sealey,* 9 Barb., 214 ; and evidence of partial failure of consideration should, therefore, have been received ; that, if the note was not indorsed until after maturity, the wife's ownership would not date from the actual sale and delivery ; that the evidence offered to show the insolvency of the payee was admissible, as having a direct tendency to establish the defense that the transaction was not *bona fide,* but was fraudulent as to creditors, as well as to establish the defendant's right to an equitable set-off, citing 2 Paige, 581 ; 14 Johns., 63 ; *Spear vs. Day,* 5 Wis., 193 ; that the indorsement by the husband to his wife, could not pass the legal title to her, for want of legal capacity in her to take it directly from him.

*Warner & Ryan,* for respondent, argued that recoupment is available only in cases where the defendant seeks to reduce the plaintiff's recovery by showing damage to or deficiency in the value of the subject matter of the action, arising from the act or default of the plaintiff, citing 2 Whittaker's Pr., 154 ; that the insolvency of the payee was immaterial, because he did not own the note after its execution ; that the set-off for goods sold was inadmissible, not being owned by the defendants jointly, nor being against the plaintiff ; that the *bona fide* holder of a note payable to order can maintain an action thereon without alleging an indorsement to him, *Billings v. Jane,* 11 Barb., 620 ; and that a husband could transfer the legal title of a note to his wife by indorsement, in consideration of money received from her separate estate, citing *Conway v. Smith,* 13 Wis., 125 ; *Todd v. Lee,* 15 id., 365 ; *Weisbrod v. Chi. & N. W. Railway Co.,* 18 id., 35 ; *Hannan v. Oxley,* 23 id., 519 ; *Pike v. Miles,* id., 164.

Dixon, C. J. The case of *Putnam v. Bicknell,* 18 Wis., 333, was decided upon the law as it stood prior to the passage of the married woman's act, and is undoubtedly a correct statement

of that law, and of the rights of the wife in equity, which was all that was then required. That case necessarily decided that the rule or principle of equity jurisprudence involved in it, and as the same existed before passage of the act, was not abrogated or affected by the act. This has been so decided in New York, where the language of the statute is the same, *Lockwood v. Cullin*, 4 Robertson, 129, 134 and 135. The case did not, however, decide, nor was it necessary to decide, nor did the court consider what, upon any given state of case or condition of facts, might be the strict legal rights of the wife under the act, where property is transferred by the husband directly to her. The case was readily disposed of upon the principles of law as they stood before the passage of the act, and which were unaffected by it, and no question as to what were or might have been the rights of the wife under the act was considered or determined.

It has been decided by the court of appeals of New York, that the husband may, in payment of a debt justly due from himself to her, transfer directly to his wife, and she will thereupon acquire valid legal title to choses in action and personal property so transferred, the transaction being otherwise fair and honest, and not in fraud of the rights of creditors or others having claims against the property belonging to the husband. *Kluender v. Lynch*, 4 Keyes, 361, 365, 370. The decision is based upon the provisions of the act authorizing the wife having a separate estate to deal with it as if she were a *feme sole*. The debt due to her from her husband was her separate property, as to which she was authorized to negotiate, deal or receive in payment the same as if she were unmarried. This is the authority given by statute, and of course, if she were a single woman and her debtor not her husband, there could be no objection to the transfer. With respect to her separate property the statute has placed her upon the same footing as to all the world, her husband included, as if this were her condition—as if she were, in the words of the statute, "a single female." As a negotiation

or dealing, therefore, with respect to her separate estate, the transaction is to be looked upon as if the debtor was not her husband, but a stranger. The marriage relation is to be disregarded, except where the question of fraud arises, and there it will be considered and the transaction more closely scrutinized on account of the greater inducements offered and facilities afforded for the commission of fraud.

Such being the obvious effect of the statute, it seems to follow, when the dealing or negotiation on the part of the wife, even with her husband, relates to her separate property, and is something necessarily or properly done in the management or control of it, that she is endowed with all the powers, privileges and capacities of a *feme sole*, and consequently that she may take title to property directly from him or without the intervention of third parties, or a trustee, the same as if she were in all respects *sui juris*, or as if the relation of husband and wife did not exist. The statute has absolutely removed the disabilities of coverture *pro tanto*, as well with respect to her dealings with her husband as with every one else, by declaring that a married woman shall have and hold her sole and separate property, as if she were a single female. This seems the fair and obvious interpretation of the statute, and we think the court of appeals was correct. It is clearly an incident of the ownership with which the wife is thus clothed by the statute, that she should have the power to make what disposition of her property she pleases, to sell or exchange it, to invest the proceeds in other property, if in the form of money to loan it, receiving securities therefor, to accept payment in money or other property as any creditor can do, and, in short, do with her property whatever any owner can do with his or hers, transactions and dealings with her husband not excepted.

In this case it appears that the wife at the time of her marriage had separate property, consisting of money received from the estate of her former husband, and which she loaned to her present husband on his promise to repay it. In payment, he

transferred to her the note in suit, made by the defendants payable to his order. This transfer was made and the note delivered to the wife before its maturity, but without formal indorsement by her husband. The wife retained the note until after maturity and then sold it to the plaintiff, who brought suit. After maturity, and before suit brought, the note was indorsed by the husband and the wife. It follows from the principles already stated, that it was competent for the wife to take the legal title of the note by transfer from her husband, provided it had been sufficiently and properly indorsed by the husband for that purpose. The note was payable to order and not transferable by delivery only, but the indorsement of the husband was necessary to cut off equities and defenses existing in favor of the makers at the time of the transfer. The delivery without indorsement operated to vest the property in the note in the wife, subject however to such defenses as the makers might then have to it in the hands of the husband. Edwards on Bills and Promissory Notes, 286, 287 and authorities cited.

But the *bona fide* holder of such paper by delivery only is protected against everything subsequent to the delivery of the paper, especially, if it be afterwards indorsed to him, it being held that the indorsement relates back to the time of delivery, as to any equity *outside of the note itself.* 1 Parsons on Notes and Bills, 278; *Ranger v. Cary,* 1 Met., 369. The transfer to the wife here was immediately after the making and delivery of the note, and it does not appear that there then existed any equity or defense whatever in favor of the makers. The defendants do not deny the consideration of the note, nor that it was fairly given, but seek by their answer to set-off an account or indebtedness of the husband for goods, wares and merchandise sold to him subsequently to the transfer of the note, and also a claim for damages against him arising from his failure to deliver a quantity of logs more than six months after the note was transferred, in pursuance of a contract which it is alleged he had entered into with them on or about the day of the date

of the note.   It is not alleged that the log contract was in any manner connected with the making and delivery of the note, or that the husband's agreement to deliver the logs entered into or formed any part of the consideration of it.   The case falls, therefore, fully within the rule of the above authorities, where the subsequent indorsement is held to relate back to the time of actual transfer, and to exclude all such defenses as are here interposed.

The foregoing observations dispose of all the objections and exceptions taken at the trial, save only to the ruling of the court excluding the evidence offered by the defendants to show the insolvency of the husband between the time of the making of the note and its maturity, and at the time of trial.   It is argued that this was error, because the evidence was admissible as tending to establish the defense set up that the transfer was not made in good faith, but was fraudulent as to the creditors of the husband.   It seems quite improbable, had the insolvency of the husband been frankly admitted, that it would have made any difference with the verdict.   But we cannot be permitted to speculate upon this, if under the circumstances it appears that the evidence ought to have been admitted for this purpose.   If it had been offered for that purpose, and then rejected, we should have little doubt about the error. But it does not appear that such was the purpose of the offer. The answer alleged the insolvency of the husband, and claimed the right of the defendants to an *equitable* set-off of their demands against him on that ground.   It was apparently with this object in view that the offer was made, and there can be no doubt, we think, that the court below so understood it at the time the  evidence was excluded.

So far there was no error in excluding the evidence, and if the counsel had any other purpose in view in making the offer, it was their duty so to have informed the court.   Parties cannot come to this court for the correction of errors or mistakes of this nature, which on mere suggestion would have been cor-

rected or avoided in the court below. It is their duty to speak and make known their purposes and objections there, when the same are necessary for the proper information and guidance of the court, and not by their silence and mode of presenting their claim or defense, to lead the court unwittingly into error, upon a point not brought forward for its consideration, and not considered. It should, under the particular circumstances of this case, we think, be made to appear that the purpose for which the evidence was offered, if it prove fraud, on which ground its admissibility is now urged, was made known to the court below at the time of the offer, or otherwise its exclusion cannot be regarded as error by this court.

The general rule, that when the evidence offered is competent for any purpose, it should be received, and it will be error to reject it, is of course indisputable and untouched. This case rests upon its own peculiar facts and circumstances.

*By the Court* — Judgment affirmed.