MAYERS, Receiver, Appellant, vs. KAISER and others, Respondents.

*May 9 — May 23, 1893.*

**Debtor** *and creditor: Husband and wife: Fraudulent conveyances: Employment of husband by wife.*

1. At the time of his failure in business one K. was indebted to his wife for money borrowed of her, the greater part of it but a short time before the failure. She obtained judgment against him, as did other creditors, and his stock of goods was sold, upon the execu-

tions issued on such judgments, to his wife and two other creditors, who continued the business, employing K. as a clerk. Afterwards the wife bought out the other two creditors, and the business was continued in her name, K. acting as manager at a salary of $5 per week, and they and their family being supported out of the proceeds of the business. Some years later she sold the business to her sons and son-in-law. In an action by a receiver of K., appointed in proceedings by one who was a creditor of K. at the time of his failure, to reach certain real estate acquired by the wife with the profits of the business, the evidence is held to sustain findings of the trial court to the effect that said transactions were not fraudulent as against the creditors of K.

2. A wife may employ her husband as her agent to manage her separate property or to carry on her business in her name, without subjecting it to the claims of his creditors; and the mere fact that the time, skill, and labor of the husband are devoted to the business of the wife does not give his creditors any right to have their claims paid out of the profits of the business or the property accumulated thereby, especially where the husband has been paid by the wife for his services.

APPEAL from the Circuit Court for *Dane* County.

The plaintiff, as receiver of the goods and property of the defendant *M. Kaiser*, appointed in proceedings supplementary to execution on a judgment for $564.67, recovered against him by one Talcott, August 21, 1885, in the circuit court for Dane county, brings this action in the nature of a creditor's suit against the said *M. Kaiser, Jennie Kaiser*, his wife, *Joseph* and *Julius Kaiser*, his sons, and *Samuel Spiegel*,— to reach and subject to the payment of said judgment certain real estate, the legal title to which is vested in his said wife, and a stock of goods and business of a store in Madison called "The Fair," carried on in her name, but in reality, as alleged, for and upon the credit of said judgment debtor, which stock of goods had been sold and transferred to his said two sons and his son-in-law; and it was alleged that said business had been carried on by said judgment debtor, pretending to act as his wife's agent, under some arrangement with his wife, for the purpose of

cheating and defrauding his creditors, including said Tal-cott; that she did not in good faith engage in business with her separate property, and did not in good faith employ her said husband to conduct such business for her as her agent; that she had never actively participated in the conduct of the business, and had little or no knowledge concerning it; that her husband had in all respects conducted it as his own, with the single exception that in doing so he had pre-tended to act as the agent of his wife. It was charged that the real estate held by the wife had been purchased with the proceeds of such business, which, it was alleged, had been large and profitable, and that said stock of goods and business had been fraudulently transferred to the said sons and son-in-law, who had previously been employed therein as clerks, with intent to defraud the creditors of the said judgment debtor. It was charged that the business and stock in trade of the said judgment debtor with which he had carried on business in Chicago until October, 1883, had been sold out upon judgments by confession,— one in favor of his wife, on a note of $1,500 she held against him, and one in favor of one Altheimer, his brother-in-law,— and had been purchased by one Wolf, as assignee of such judgments, in fact for the benefit of the judgment debtor; that the said notes were given, judgments entered, and sales made, for the purpose of covering up the property of the judg-ment debtor, and to prevent creditors from levying on it, and as a part of a scheme for defrauding his creditors, and that said Talcott was one of his creditors at the time; that these goods, and others purchased on his credit, were sent to Madison, and with them the business of " The Fair " was opened and carried on in the name of his wife.

The answers of the judgment debtor and his wife insist that the notes to her and Samuel Altheimer were given for an actual indebtedness for those sums, respectively, and deny that they were given or used for any fraudulent or

improper purpose, and deny generally and specifically all the charges of fraud stated in the complaint, and allege that the purchase of said goods was for the benefit of said Wolf, and that they were afterwards sold to the wife of the judgment debtor and placed in the store where, ever since November, 1883, or thereabouts, she had carried on business. It is denied that any goods therefor were bought on the credit of her husband, and stated that all the goods had been purchased in the name and for the benefit of his wife, and the business carried on entirely with her means and for her benefit; that the connection of the judgment debtor therewith was solely as her agent, and not for his benefit in any way, he working for her upon a regular salary; that the stock of goods in the Fair store did not exceed in value the sum of $5,000, and that the real estate which stood in the name of the wife was her home, and was heavily mortgaged; that the facts relative to said business and to the manner in which judgments in favor of the wife and Samuel Altheimer were obtained were fully investigated and known to Talcott in 1883, and the six years statute of limitations was relied upon as a bar; that it was agreed that the goods purchased at said sale should be managed and sold out by Wolf for the common profit of him and Altheimer, and it was finally sold to the wife of the judgment debtor, she giving her note for what it had cost him; that the stock in trade and business was sold out by her February 15, 1892, for $5,368.23. The answers denied all fraud in said sale.

The defendants *Joseph Kaiser* and *Samuel Spiegel* set up the circumstances of their purchase, averring that it was for a valuable consideration and in good faith, without any intent to defraud the creditors of said *Kaiser*.

The examination of the judgment debtor on supplemental proceedings was given in evidence, and also of his wife, in relation to the allegations of the complaint, from which it

appeared that the judgment debtor was in business in Chicago from 1867 to 1883, and was in the wholesale business in 1880, doing a large business; that his merchandise was sold at sheriff's sale, and he did not buy in any, nor did his wife; that he owed about $14,000, and he had it reduced to about $6,000; that Marshall Field & Co. closed him up; that the business in Madison had been her business, and he managed it for her, buying most all of the goods on credit; that the bank accounts were kept in his wife's name; that he was her employee and never put in any money there or into the property that belonged to his wife; that the money that built the houses came out of the business; that the $1,500 on which she obtained her judgment had been owing her since 1881, and was for a present made to her by her uncles when she was married. The wife of the judgment debtor also testified on the trial to the effect that she purchased Mr. Altheimer's interest in the goods sold at Chicago, and gave him a note for $900. Simon Wolf also testified in regard to the transaction quite fully, and an agreement was produced in evidence between him and *Mrs. Kaiser*, dated October 15, 1883, in regard to the sale and disposition of said goods, by which *Mayer Kaiser*, the judgment debtor, was to be engaged as a clerk during a sale thereof at a salary of $25 a week. It appeared that Wolf received his full pay of *Mrs. Kaiser* December 29, 1884. *Kaiser* testified that when the business was continued in Madison he took $5 a week for his own use and support; that there was no agreement about salary; that the $25 a week was never paid him. Evidence was given to show that the debt to Altheimer was paid in 1885. Mercantile agency reports were put in evidence regarding the financial standing of *J. Kaiser*, *J. Kaiser & Co.*, and *Kaiser Bros. & Spiegel*, covering a period from October 6, 1884, to February 24, 1892, in which the stock was variously stated at from $10,000 to $35,000, and the amount of yearly sales at

$50,000 and upwards, net annual gains $5,000 and upwards, and in which it was stated that the business was conducted by *Mayer Kaiser*. *Kaiser* made some of the reports for his wife.

The finding of the circuit court as to the *bona fides* of the business conducted in the name of *Jennie Kaiser*, the wife of the judgment debtor, was to the effect that at the time of their marriage she received $1,500, marriage portion. That her husband was in business in Chicago, and lost considerable property in the great fire, after which she loaned her husband part of her marriage portion, which was used in business. That he was owing her $1,500 on account of said loans, October 1, 1883, and the judgment was given on a note for that money. That he was indebted to Marshall Field & Co. in about $3,600, and to S. Altheimer in about $4,700, and to various other creditors. That Field & Co. recovered two judgments against him for their debt, upon which executions were issued and levied on his property, together with an execution on the judgment in favor of his wife. That the latter judgment was for a full consideration and was not obtained for the purpose of hindering or delaying the creditors of the defendant *M. Kaiser*. That more than six years had passed since judgment upon the note in favor of Talcott was rendered, and that the facts concerning its entry were fully known to him or his agent immediately after the entry thereof. That the judgment in favor of Altheimer was for a valid, existing indebtedness, and an execution in like manner was levied upon *Kaiser's* property subsequent to the judgments and executions of Field & Co. and *Jennie Kaiser*. That the agent of Talcott was present at the sale, which was fairly conducted at public auction by the sheriff of Cook county. That Wolf purchased and became the owner of the judgment of Field & Co. That there was no surplus after said execution sales. Wolf, *Mrs. Kaiser*, and Altheimer entered into an agree-

ment in respect to purchasing goods at the sale, to the effect that whatever goods were purchased should be put together and sold in the name of S. Wolf & Co., and that when Wolf should receive back his money, expenses, etc., fixed at $4,379.95, his interest in them should cease; that the expense of selling the goods should be deducted from the money received; and that *Kaiser* should be employed as a clerk at a salary of $25 a week. Wolf bid in at the sheriff's sale goods enough to cover the judgments of Field & Co. owned by him, and as agent for *Mrs. Kaiser* he bid in enough of the stock to cover the amount of her judgment, and Altheimer bid in enough to amount to the sum of $897.85. That the goods were removed into a store in Chicago, *Mrs. Kaiser* purchasing from Altheimer the goods he had bought, for which she gave her individual note. That the business was continued in Chicago under the name of S. Wolf & Co., *Kaiser* working under the contract at $25 a week, and he and his wife and family all lived in the same building. That the goods were removed to Madison, and the Fair store opened and operated by S. Wolf & Co. under the contract until December 29, 1884, when Wolf had about $500 still in the business, and he then sold out to the defendant *Jennie Kaiser*, took her note for the amount, which was afterwards paid by her, as was also the $900 to Altheimer. That the business and all the property from that time on were owned by the defendant *Jennie Kaiser*, and were managed by the defendant *Mayer Kaiser* as her agent. That the children of the parties worked in the store, and all lived together. That *M. Kaiser* was thereafter employed by the defendant *Jennie* at a salary of $5 a week, and they were all supported out of the proceeds of the business, which seems to have been reasonably profitable. That on the 18th of February, 1892, an inventory was taken, at which time the amount of stock was $5,368.23, and there were outstanding mercantile accounts against it to the amount of $2,741.63. That

the defendant *Jennie Kaiser* then sold the stock of goods to *Kaiser Bros. & Spiegel* for $5,368.23, receiving $2,100 in cash from them, their note for $500, and they assuming the mercantile indebtedness.   That the sale was made in good faith and for a full consideration, and not for the purpose of hindering or delaying creditors of the said judgment debtor or any other person.   That the sum paid by *Kaiser Bros. & Spiegel* was all the stock was worth, and they had no notice or information whatever that he had any interest or right therein.

As a conclusion of law the court found that the defendant *Jennie Kaiser* was the absolute owner of the property. up to the time of the sale to *Kaiser Bros. & Spiegel*, when they became and now are the owners thereof, and that none of the property could be subjected to the debts of said judgment debtor.   The action was dismissed, with costs against the receiver as such, but no personal judgment was given against him, from which he appealed.

For the appellant there were briefs by *Bashford, O' Connor & Polleys*, and oral argument by *T. A. Polleys* and *R. M. Bashford*.   They contended, *inter alia*, that the judgment entered in favor of the defendant *Jennie Kaiser* and against the defendant *M. Kaiser* on October 5, 1883, was invalid as against the then existing creditors of *M. Kaiser* (1) because it was procured to be entered with the intent, on the part of both husband and wife, of hindering, delaying, and defrauding the husband's creditors; and (2) because a large part of said judgment was for money of the wife which, according to the undisputed evidence, had been for years employed by the husband in his business, without promise of repayment to his wife, and upon the strength of which he had obtained credit.   *Humes v. Scruggs*, 94 U. S. 22; *Knowlton v. Mish*, 17 Fed. Rep. 198; *Lyon v. Zimmer*, 30 id. 401; *Wortman v. Price*, 47 Ill. 22; *Wilson v. Loomis*, 55 id. 352; *Patton v. Gates*, 67 id. 164; *Hockett v. Bailey*,

86 id. 74. See, also, *Guill v. Hanny*, 1 Bradw. (Ill.), 490;*
*Miller v. Payne*, 4 id. 112; *Coon v. Rigden*, 4 Colo. 275;
*Driggs Bank v. Norwood*, 50 Ark. 42; *Clark v. Rosen-*
*krans*, 31 N. J. Eq. 665; *Luers v. Brunjes*, 34 id. 19; *Besson*
*v. Eveland*, 26 id. 468; *Lyne v. Bank of Kentucky*, 5 J. J.
Marsh. 545; *In re Jones*, 6 Biss. 68; *Levi v. Rothschild*, 69
Md. 348; *Hopkins v. Joyce*, 78 Wis. 443; Bump, Fraud.
Conv. (3d ed.), 311; *Diggs v. McCullough*, 69 Md. 592;
*Jenkins v. Middleton*, 68 id. 540; *Kuhn v. Stansfield*, 28 id.
210; *Edelen v. Edelen*, 11 id. 415; *Bohde v. Lawless*, 33 N. J.
Eq. 412; *Gardner v. Gardner*, 1 Gif. 126; *Moyer v. Adams*,
9 Biss. 390; *Nolen's Appeal*, 23 Pa. St. 37; *Steadman v.*
*Wilbur*, 7 R. I. 481; *Jacobs v. Hesler*, 113 Mass. 157. The
business at Madison was established and conducted by
*M. Kaiser*, pretending to act as agent for his wife, with the
intent and purpose of hindering, delaying, and defrauding
his creditors. Where a husband is in debt and insolvent,
arrangements by which the wife acquires and afterwards
manages by his agency property as her separate estate, af-
ford some ground for suspecting that they are adopted as
a cover to disguise the substantial ownership of the hus-
band, and to defraud his creditors. *Knapp v. Smith*, 27
N. Y. 277; *Dayton v. Walsh*, 47 Wis. 113; *Ladd v. Newell*, 34
Minn. 107; *Laib v. Brandenburg*, 34 id. 367; *Leonard v.*
*Green*, id. 137; *Horneffer v. Duress*, 13 Wis. 603; *Lachman*
*v. Martin*, 139 Ill. 450; *Baker v. Lynch*, 75 Wis. 630; *Brick-*
*ley v. Walker*, 68 id. 573; *Fox v. Zimmerman*, 77 id. 418;
*Gettelman v. Gitz*, 78 id. 441–2. The creditors of *M. Kaiser*
are entitled to receive payment of their claims out of the
property accumulated, beyond the present needs of his
family, by the skill, industry and ability of the said *Kaiser*
in managing and conducting the business at Madison as the
pretended agent of his wife. As to the right of a husband
to donate his services to his wife in conducting a general
trade or mercantile business for her, see *Wortman v. Price*,

47 Ill. 22; *Wilson v. Loomis,* 55 id. 352; *Guill v. Hanny,* 1 Bradw. (Ill.), 490; *Card v. Robinson,* 2 id. 19; *Hallowell v. Horter,* 35 Pa. St. 375; *Glidden v. Taylor,* 16 Ohio St. 509; *Feller v. Alden,* 23 Wis. 301; *Patterson v. Campbell,* 9 Ala. 933; *Tripp v. Childs,* 14 Barb. 85; *Hamilton v. Zimmerman,* 5 Sneed, 39; *Penn v. Whitehead,* 17 Gratt. 503.

For the respondents there was a brief by *Bushnell, Rogers & Hall,* and oral argument by *A. R. Bushnell* and *F. W. Hall.* They argued, among other things, that the creditors of *M. Kaiser* have no claim upon the profits of the business because of his services in conducting it. The great weight of authority is to the effect that a husband has a right to give his whole time to his wife's business without compensation, and his creditors cannot complain. 2 Bishop, Mar. Wom. sec. 453; Kelly, Cont. Mar. Wom. 149, 150; *Webster v. Hildreth,* 33 Vt. 457; *White v. Hildreth,* 32 id. 265; *Spering v. Laughlin,* 113 Pa. St. 209; *Cooper v. Ham,* 49 Ind. 394; *Isham v. Shafer,* 60 Barb. 317; *Rankin v. West,* 25 Mich. 195; *Penn v. Whitehead,* 12 Gratt. 74; *Keller v. Mayer,* 55 Ga. 406; *Ashurst v. Given,* 5 Watts & S. 323; *Seeds v. Kahler,* 76 Pa. St. 263; *Gage v. Dauchy,* 34 N. Y. 297; *Preno v. Hewitt,* 55 Vt. 367; *Moore v. Lampton,* 80 Ind. 301; *Corning v. Fowler,* 24 Iowa, 585; *Sexton v. Martin,* 37 Ill. App. 538; *Rush v. Vought,* 55 Pa. St. 437; *Dayton v. Walsh,* 47 Wis. 113; *Miller v. Peck,* 18 W. Va. 75; *Eilers v. Conradt,* 39 Minn. 242.

*H. W. Chynoweth,* for the respondents *Kaiser Brothers & Spiegel.*

PINNEY, J. 1. The evidence shows that the judgments upon which the stock of *Mayer Kaiser,* the judgment debtor, was sold out in Chicago in October, 1883, were for honest debts which he then owed; and there is nothing in the evidence, so far as we are able to see, to show that there was anything improper or unfair in the manner in

which the title to the stock purchased became vested in *Mrs. Kaiser*, Simon Wolf, and Altheimer, October 15, 1883, or in the agreement which they made for its management and sale by Wolf and *Mrs. Kaiser* for the benefit of the purchasers. The agreement of that date is a plain and reasonable business arrangement, and the facts which it recites are sustained by the evidence. There is nothing to show that the husband and judgment debtor had or used any funds or means of his own to enable his wife ultimately to become the sole owner of the business conducted at " The Fair," established in the first instance by Wolf and *Mrs. Kaiser* under said agreement. The note for $1,500, upon which the judgment against *Kaiser* in favor of his wife was rendered, was given for money which she testifies she loaned her husband, and the greater part of it but a short time before his failure; and his testimony tends to show that the money was loaned and was not a gift. There is no evidence to the contrary, and the finding of the circuit court that it was a loan is sustained, we think, by the evidence. If the money was a *bona fide* loan and not a gift there is no reason why the wife should not be protected in like manner as other creditors. She purchased Wolf's interest, and made full payment therefor, December 29, 1884, and bought out and paid Altheimer for his interest. *Mrs. Kaiser's* husband, the judgment debtor, was employed in the mean time in the business, at $25 per week; and he managed the business, and rendered his personal services, which were thereafter continued at the rate of $5 per week. It seems clear that the title to the goods and business was, until the sale thereof, February 15, 1892, to her codefendants, her sons and son-in-law, in *Mrs. Kaiser*, and there is no reason whatever for questioning its validity as to her husband's creditors, unless the fact that he gave his personal time, attention, and services to the management and conduct of the business for about nine years is ground for

impeaching her title, as being for that reason fraudulent as against his creditors, and who were such at the time of the execution sales in October, 1883. It may be conceded that there are some statements in the testimony of the judgment debtor calculated to create suspicion, and particularly in respect to the extent of the business, amount of profits, and value of the stock; but these appear, upon the whole, to have been grossly exaggerated. The circuit court found that the sale of the stock, of February 15, 1892, was for its fair value, and the real estate, the home of the family, appears to be incumbered. While the court should carefully scrutinize all cases of alleged fraud against creditors, wherein members of the family of the debtor make claim to important or valuable interests as against creditors, yet judgment cannot go upon mere suspicion. Fraud cannot be presumed, and the burden of showing it is on him who alleges it.

2. As the business established at Madison in the Fair store was the business of *Mrs. Kaiser*, as against her husband's creditors, she might lawfully employ her husband, with or without hire, to manage it and assist her in carrying it on. The evidence does not sustain, we think, the charge that what he did in this respect was in pursuance of any plan or scheme to defraud his creditors. The business was not only her own, and transacted in all respects in her own name, but it does not appear that any claim was ever made to the contrary until this proceeding was instituted, nor that she ever made any concession, or her husband any claim, to the contrary, or that he has, during a period of eight or nine years, used any of the proceeds beyond his five dollars per week as his own, or claimed the right to do so. We are unable to say that his employment and management of the business was not in good faith, or that it shows that he was the real owner and the title of his wife was merely nominal or colorable. *Mrs. Kaiser*

had a right to deal with her separate property in all respects as a *feme sole*, and had a right to employ agents to assist her in managing her property and carrying on her business; and she had a right to employ or avail herself of the services of her husband without subjecting her separate estate to the claims of his creditors. " With respect to her separate property the statute has placed her upon the same footing as to all the world, her husband included, as if she were, in the words of the statute, ' a single female.' " *Beard v. Dedolph*, 29 Wis. 140. But she may not enter into partnership with him. *Fuller & Fuller Co. v. McHenry*, 83 Wis. 573. " As a negotiation or dealing, therefore, with respect to her separate estate, the transaction is to be looked upon as if the debtor was not her husband, but a stranger. The marriage relation is to be disregarded, except where the question of fraud arises; and there it will be considered, and the transaction more closely scrutinized, on account of the greater inducements offered and facilities afforded for the commission of fraud." *Beard v. Dedolph*, 29 Wis. 140; *Hoxie v. Price*, 31 Wis. 82; *Abbey v. Deyo*, 44 N. Y. 348; *Gage v. Dauchy*, 34 N. Y. 297.

3. The proposition most strongly pressed at the argument was that the creditors of *Kaiser*, the husband, were entitled to receive payment of their claims out of the property accumulated, beyond the present needs of his family, by his skill, industry, and ability in managing and conducting the business of "The Fair" as the agent of his wife; and the cases of *Glidden v. Taylor*, 16 Ohio St. 509, and *Feller v. Alden*, 23 Wis. 301, among others, were cited in support of the position. This contention is contrary to the case of *Dayton v. Walsh*, 47 Wis. 113; wherein it was held that where a married woman, having at the time no separate estate, purchased a farm of a stranger entirely upon credit, giving her notes for the price, secured by a mortgage on the property, and her husband lived with her on

the farm and controlled the farm labor, carrying on the business in her name and as her agent without any agreement as to his compensation for such services, the purchase by her having been made in good faith and not as a means of fraudulently placing the husband's property beyond the reach of his creditors, the crops raised on the farm by their *joint* labor and management belonged to the wife, and that they were not subject to sale for the husband's debts. This conclusion was considered to be in accordance with the case of *Feller v. Alden*, 23 Wis. 301, relied on by the appellant. In *Feller v. Alden* it was held that where the wife owned land as her separate estate she might cultivate it by means of the labor of her husband and their minor children, and that the *legal* title to the products and proceeds would be in her, so that they could not be levied upon under an execution against her husband; that the mere fact that the wife employed the husband's services in cultivating her land was not proof of an attempt to defraud his creditors. It was questioned in that case, upon the authority of *Glidden v. Taylor*, 16 Ohio St. 509, whether a court of equity, upon a proper application of the husband's creditors, would not make an apportionment of the products, as between the fair rent and use of the capital of the wife and the value of the personal services of the husband, so as to give the creditors the benefit of his industry, but the question was not decided. The case of *Glidden v. Taylor, supra,* is materially different from this case, in respect to the fact that in this the husband had a compensation for his services, and none of his property was used in the business, and none of the profits applied to his use. *Penn v. Whitehead,* 17 Gratt. 503, seems to hold that in such a case as *Glidden v. Taylor* the wife would not be entitled to any share of the profits. It is stated in some of the text-books, and held by many well-considered cases, that the time, talents, and industry of a debtor are at his own disposal, and that his creditors

have no claim thereto; that he may bestow them gratuitously upon whom he will, and upon his wife as well as another, and that he cannot be compelled to labor for the benefit or advantage of his creditors; that while the law does not require the wife to support the husband it does not prohibit her from using her own means for that purpose or for the support of his children.    2 Bish. Mar. Wom. § 453; Kelly, Cont. Mar. Wom. 149; *Abbey v. Deyo*, 44 N. Y. 344; *Gage v. Dauchy*, 34 N. Y. 293; *Buckley v. Wells*, 33 N. Y. 518; *Foster v. Persch*, 68 N. Y. 400; *Third Nat. Bank v. Guenther*, 123 N. Y. 568.    In *Spering v. Laughlin*, 113 Pa. St. 209, 213, it was held that, if a married woman's separate right to property is found to exist, her husband may not only act as her agent, but he has the legal right to give his wife his labor and skill in conducting her business, and his creditors cannot sell her property, produced by his labor and skill with her original property.    *Baxter v. Maxwell*, 115 Pa. St. 473.    The entire question in all such cases would seem to be whether the property and business in question is really that of the wife, or whether it is that of the husband and her claim to it a mere cover to protect it from his creditors.    We are unable to understand how the husband's creditors can be said to be defrauded, when they cannot compel him to labor for their benefit, if he voluntarily bestows on others, or on his wife, that which under the law they cannot reach for the satisfaction of their demands.    The cases of *Wortman v. Price*, 47 Ill. 22, and *Wilson v. Loomis*, 55 Ill. 352, while differing in some respects from the present, are not in accord with our own cases or those cited above; and *Hallowell v. Horter*, 35 Pa. St. 375, was a case of confusion of property, and the whole was held liable for the husband's debts.    The cases that hold or intimate an opinion that in a court of equity an apportionment of profits or division of property may be had at the suit of the husband's creditors, will be found to rest

upon the ground of community or blending of the money or property of the husband, as well as his labor, with the property of the wife in some business venture or enterprise in which there is a common participation in or use of the profits; and we have met with no case in which the bare fact that the time, skill, and labor of the husband devoted to the business of the wife has been held to give rise to such an equity. It is difficult to see how such an equity could arise where the husband has already been paid for his services, as agreed, by the wife. We think that the plaintiff's contention in this respect cannot be sustained.

We think that the evidence sustains the findings of the circuit court, and it is therefore not necessary to consider the question whether the action was barred by the statute of limitations, or by laches on the part of the creditor instituting the action. We do not find any error in the record.

*By the Court.*— The judgment of the circuit court is affirmed.