Ansorge, Assignee, Respondent, vs. Barth and wife, Appellants.

*October 25 — November 13, 1894.*

*Debtor and creditor: Fraudulent conveyances: Husband and wife: Business carried on in son's name.*

1. An insolvent debtor has a right, as against his creditors, to give to his son his exempt property and also his time in carrying on and managing his son's business.

2. But an insolvent debtor cannot accumulate property under cover of another's name, acting ostensibly as the agent of such other, and hold it as against his creditors; and where such a claim is made, it is always a question of fact whether the business actually belongs to such other person, or to the ostensible agent and debtor, and whether the alleged agency was a mere scheme and device to conceal and keep the property used in or gained by it from his creditors.

3. Land purchased in the name of the wife of an insolvent debtor was paid for out of the proceeds of a business carried on by him in the name of his son. In an action to subject such land to the payment of his debts, the evidence — showing, among other things, that the wife had no separate estate, and that the son had contributed nothing to the business but the use of his name, and had paid no attention to the purchase of the land, which was managed by his father; and not showing that the son had ever received any of the proceeds

of the business, or that there had ever been an accounting between him and his father in reference thereto — is *held* to sustain findings of the trial court to the effect that the debtor was the real owner of the business, and carried it on in the son's name for the purpose of fraudulently concealing it and its profits from his creditors; that the land was purchased with such profits and conveyed to the wife and accepted by her with the same fraudulent intent; and that it should be conveyed by her to her husband's assignee for the benefit of creditors. *Mayers v. Kaiser*, 85 Wis. 382, distinguished.

APPEAL from the Circuit Court for *Brown* County.

This action was brought by the plaintiff, as assignee of the defendant *A. Joseph Barth* for the benefit of his creditors under an assignment made July 31, 1889, against the assignor and *Anna Barth*, his wife, to reach and subject to the payment of the debts of the assignor three certain parcels of real estate, purchased and conveyed to the defendant *Anna Barth*,— one October 15, 1883; one October 25, 1886; and one September 20, 1888,— all for the price and of the value of about $5,600. It was charged, in substance, that said real estate was purchased with the money and funds of her husband, *A. Joseph Barth*, derived from a business carried on nominally in the name of his son Alois Barth, but really and in fact by his said father and for his sole benefit, and that he caused the title to said real estate to be conveyed, by the parties from whom he purchased it, to his wife, for the purpose and with the intent of defrauding his creditors.

The defendants denied the fraud charged; and, after trial, the court found that before and at the time of making the assignment the defendant *A. Joseph Barth* was indebted to one Mary Van den Braak on a judgment rendered against him and in her favor October 19, 1878, for $11,213.58, on which there still remained due and unpaid $10,700 and interest from January 1, 1881, and she had filed her claim thereon against *Barth's* assigned estate; that he was insolvent in May, 1881, and owned no property not exempt from

execution; that he then commenced to carry on a wholesale liquor business, conducting it in the name of A. Barth, his son, and ever since carried on the same, pretending that he was the agent of his said son therein, when in fact the business belonged to said *A. Joseph Barth*, who was, as between himself and his son, the real owner thereof, all for the purpose of fraudulently concealing the profits and proceeds of said business from his creditors, and especially from Mary Van den Braak; that in fact the said son, A. Barth, never owned any interest in said business, although the legal title thereto was in his name, and he still claimed to be in possession and control of it and its assets; that the parcels of land mentioned were purchased at the times stated with and out of the profits and proceeds of said business, and conveyed to the defendant *Anna Barth* with the fraudulent intent of keeping the same from the creditors of the assignor; that she accepted such conveyances without paying anything therefor, and with the intent and purpose of aiding her husband in defrauding his creditors, and also accepted an assignment of one share of stock in the Fair & Park Association of Green Bay, Wis., of the value of $600, but purchased and paid for by her said husband; that prior to the action *A. Joseph Barth* had made application, based on said assignment and proceedings thereon, to be discharged from his debts.

It was found, among other things, as matter of law, that said defendant *Anna Barth* held said parcels of real estate and share of stock in trust for the creditors of her husband, *A. Joseph Barth;* that she should convey and assign said property to the plaintiff, her husband's assignee, to be disposed of by him in payment of the debts of her husband; and that he should deliver up possession thereof accordingly, and be restrained from transferring or incumbering the same; and that the plaintiff should sell and dispose thereof according to the terms of the assignment and

of the law; and that the plaintiff recover his costs. Judgment was given accordingly, from which the defendants appealed.

For the appellants there were briefs by *Wigman & Martin*, attorneys, and *Joshua Stark*, of counsel, and oral argument by *Mr. Stark* and *Mr. P. H. Martin*.

For the respondent there was a brief signed by *Ellis, Greene & Merrill*, attorneys, and *E. H. Ellis*, of counsel, and oral argument by *E. H. Ellis*.

PINNEY, J. It appears that the assignor, *Barth*, in 1874, was engaged with others in the wholesale liquor business, and they failed. All the assignor's property not exempt from execution was taken on execution and sold. With his exemptions, amounting to $200, he started a saloon, and continued in that business until May, 1881, but without much success, for it is conceded that he was still insolvent and owned no property not exempt. He had a family of eight children, six of whom lived with him. His oldest son, Alois, was, and for some years had been, engaged in carrying on successfully the business of manufacturing and selling cigars upon premises adjoining the building in which the assignor, *Barth*, had his saloon. The appellants claimed that in May, 1881, the assignor, *Barth*, sold and transferred his saloon business and the exempt property he owned connected therewith to his son Alois, and that thereafter the business was carried on by and in the name of the son, by whom the license fees and special taxes on the business were paid; that the assignor, *A. Joseph Barth*, was employed as manager of the business, at a salary of $60 a month during the first two years, and thereafter of $70; two other sons were also employed upon various salaries in the said business; that, shortly after purchasing the saloon, Alois borrowed $400, and started in a small way a wholesale liquor business upon the same premises. It ap-

peared that the special taxes to the United States for the liquor business had been charged to Alois, the son, each year from May 7, 1883, to July, 1892, and receipts given therefor were in his name, and that licenses were issued for the same business by the city of Green Bay to him from May, 1887, to May, 1892; that Alois Barth did not actively participate in the management of the saloon or the liquor business, but they were entirely conducted by his father. It seems to be a fair conclusion from the evidence that the proceeds of the cigar business were not used in any way for the saloon or liquor business, but that each business was managed and conducted entirely separate from the other; and the question presented was whether the title and ownership of the son to the saloon and liquor business and its proceeds were real and *bona fide*, or whether they were merely simulated, and a sham and cover to protect and keep the property from his father's creditors, and enable him to enjoy and dispose of it at his pleasure.

There was some evidence tending to show that on a few occasions the father had spoken and acted in reference to the business as his own, but it was all transacted in the name of the son. It was shown beyond dispute that the property in question was purchased and paid for, and some of it considerably improved, from the proceeds of the liquor business. The assignor, *Barth,* was during all these years insolvent, and there was a judgment over him, upon which there was due over $10,000, besides interest; and this fact shows a strong motive why a man not more than fifty-four years old consented to become a subordinate and servant where he had hitherto been owner and master. After the lapse of a considerable number of years, he made the assignment, upon the basis of which he now seeks to obtain a discharge from his debts; and this is significant, and shows his anxiety to be again in a position to transact business in his own name; but, if the theory advanced by the

appellants is true, he has no means whatever with which to engage in any business pursuit. A careful examination of the evidence shows, so far as we can discover, that all that Alois, the son, ever contributed to the business, was the mere use of his name; for it is doubtful if he ever paid his father anything for the exempt property, and the borrowed money raised to extend the business was, no doubt, paid out of its profits. There is certainly no evidence that Alois paid anything out of the proceeds of his cigar business to or for the benefit of the saloon or liquor business, and there was no substantial or satisfactory change of possession at the time of the alleged transfer. The facts upon which the defendant *Anna Barth* founds her title are certainly very equivocal, not to say suspicious. Besides, the relations existing between the parties are such that, while they are not *per se* a badge of fraud, yet they facilitate and render its perpetration comparatively easy, and are proper matter for consideration in connection with all the facts and circumstances. *Hoxie v. Price*, 31 Wis. 82, 86; *Beard v. Dedolph*, 29 Wis. 136. The assignor and his wife, as well as Alois, all testified that the business belonged to and was the business of the latter, and that his father had no interest in it: but their statements to this effect are, to a great extent, matter of opinion and conclusion, and, in view of the circumstances, are not very satisfactory evidence. Neither the books kept in the liquor store or cigar business, nor any documentary evidence whatever, beyond the deeds to the real estate and the licenses and tax receipts, were presented to sustain the title of the defendant *Anna Barth* as against the claim of her husband's creditors and the circumstantial and cogent evidence of fraud thus presented.

The issue was a narrow one; namely, whether *A. Joseph Barth* was merely a *bona fide* employee, without interest or ownership, or not. There was no evidence to show that Alois ever actually received any of the proceeds of the sa-

loon or liquor business, or that there was ever any account-
ing between the father and son, or any balance stated in
relation to a business wholly managed by the former and
entirely separate and distinct from the cigar business of
the son; and, while the liquor business must have been
quite a considerable one, the books kept in it were not pro-
duced, showing the amount of profits gained, or what dis-
position or use had been made of them, beyond the purchase
of the property in question. The testimony of Alois Barth
in regard to the purchase of the real estate places whatever
might otherwise be considered equivocal or ambiguous in
a strong and clear light. He said his father managed the
purchase of the real estate, and added: "I could not tell you
anything about that. *It may be so. I don't know.* I might
have heard my father say something about it, but *I never
paid any attention to it.* My mother might have spoken
of it, but it *has escaped my memory.* I have enough to do
to mind *my own business."* And yet he claims that he fur-
nished the money to purchase the property, and that it was
the proceeds of *his* liquor business; that he kept an account
of the money in his mind, but in no other way. He says
he was not present when the bargains were made for the
property; that he did not attend to the buying of it, but
his father might; that it might have been by some other
person. "I don't know anything about it. Q. You didn't
have any interest in that? A. No." Although he subse-
quently said he had " something to say about the payment,
and the manner in which it was to be made," but what he
does not state, and that the deed was to be made in the
name of his mother, but this may have been merely ad-
visory.

The theory of the defense is that Alois gave his mother
this money, part of the proceeds of the liquor business,
with which the property in question was purchased; and
it is claimed that the assignor, the husband, as against his

creditors, had a right to give Alois his exempt property, and his time as well in managing the business. As matter of law, this is correct and must be conceded. *Carhart v. Harshaw*, 45 Wis. 340; *Allen v. Perry*, 56 Wis. 185; *Dayton v. Walsh*, 47 Wis. 113; *Mayers v. Kaiser*, 85 Wis. 382. But an insolvent debtor cannot accumulate property under the cover of another's name, acting ostensibly as the agent of such other, and hold it as against his creditors; and where such a claim is made, it is always a question of fact whether the business actually belongs to such other person, or to the ostensible agent and debtor, and whether the alleged agency was a mere scheme and device to conceal and keep the property used in or gained by it from his creditors. *Feller v. Alden*, 23 Wis. 301; *Hoxie v. Price*, 31 Wis. 82; *Dayton v. Walsh*, 47 Wis. 113; *Mayers v. Kaiser*, 85 Wis. 394; *Knapp v. Smith*, 27 N. Y. 280; *Abbey v. Deyo*, 44 N. Y. 347, 348.

Appellants' counsel relied on the case of *Mayers v. Kaiser*, 85 Wis. 382, as controlling the present case, but that case is clearly distinguishable from this one. In that case it was clearly shown that the wife had a separate estate, in the use of which in business she acquired the means with which she purchased the real estate in dispute; and the fact that she employed her husband as her agent on a salary, though an inadequate one, or he even gave her his services in managing the business, it was held, would not render the property liable to the claims of his creditors. Here the wife had no separate estate, and paid nothing for the property. The money with which it was purchased was given to her by her son, it is said; but we think the evidence satisfactorily shows that the title of the son to the liquor business and the money realized in it was simulated, and was fraudulent as against her husband's creditors, and that it was in fact her husband's money. It will not be contended that an insolvent husband might give his

wife money with which to buy property, and that she could hold it as against his creditors; and yet the present case is not materially différent. The trial judge heard the evidence of the witnesses, and found the claim of title of the defendant *Anna Barth* to the property in question fraudulent as against her husband's creditors, and that the money with which it was purchased was gained in a business conducted by him under the cover of the name of his son and in order to fraudulently conceal and keep the same and its profits from his creditors. We concur in this conclusion, and hold that the judgment of the circuit court is correct.

*By the Court.*— The judgment of the circuit court is affirmed.