## WASEM, TRUSTEE IN BANKRUPTCY, v. RABEN ET AL.

[No. 6,923. Filed January 27, 1910.]

1. HUSBAND AND WIFE.—*Wife's Powers.—Contracts.—Suretyship.— Real Property.*—A married woman's separate power to contract is denied only in cases of suretyship, sales or mortgages of real estate, and executory contracts to sell or mortgage real estate. p. 224.

2. HUSBAND AND WIFE.—*Partnership.—Agency.*—A married woman may become a partner with her husband, borrow money from him, be sued by him, or appoint him as her agent. p. 225.

3. FRAUD.—*Husband and Wife.—Ancient Policy.*—The relation of husband and wife is considered in determining whether fraud exists, but the ancient policy of regarding them as one person is disregarded. p. 226.

4. FRAUD.—*Wife's Separate Property.—Husband's Services.—Recovery for, by Trustee in Bankruptcy.*—The value of a husband's services in managing his wife's separate estate, where he has no community of property nor partnership therein, cannot be recovered from such wife, in an action by the husband's trustee in bankruptcy. *Cooper v. Ham*, 49 Ind. 393, explained. p. 226.

5. EXECUTION.—*Work and Labor.*—Work performed by a husband for his wife upon her separate estate is not subject to execution, nor can it be reached by his creditors. p. 229.

From Posey Circuit Court; *Lucius C. Embree,* Special Judge.

Suit by Andrew Wasem, as trustee in bankruptcy of the estate of Theodore H. Raben, against Rosa Raben and others. From a judgment for defendants, plaintiff appeals. *Affirmed.*

*G. V. Menzies, H. F. Clements* and *Spencer & Brill,* for appellants.

*Barker & Zimmerman* and *George A. Cunningham,* for appellees.

ROBY, J.—Suit by Andrew Wasem, trustee in bankruptcy of the estate of Theodore Raben, a bankrupt, against Rosa Raben, Theodore Raben and the F. W. Cook Brewing Company, to have the title to certain property declared to be in

said trustee for the purposes of said trust. The complaint is in one paragraph. The issue was formed by a general denial. A special finding of facts was requested and 'made, and conclusions of law stated thereon, in accordance with which judgment was rendered for the defendants. A motion for a new trail was made and overruled. Overlooking defects in form in such motion, it still requires no further attention, the legal propositions upon which the respective rights of the parties depend being presented by appellant's exceptions to the conclusions of law. The special findings show appellees Raben to be husband and wife, married in 1880. At that time the husband was a young man without property. He clerked in a store until 1885, at which time, the firm for which he worked having been dissolved by death, he with his father and brother formed a new firm, and succeeded to the business and liabilities, he contributing $800, which sum he had saved from his earnings. In 1893 this firm became insolvent, and its property was sold by a receiver, a large part of its indebtedness, including some of that assumed, remaining unpaid. He thereupon became agent for a brewery company, and continued in such employment until December, 1895, at which time, on account of such agency, he was more than $2,000 in debt. He endeavored to contract with another company, but was unable to do so on account of lack of credit and inability to give security. Prior to this time Rosa Raben had become the owner of 240 acres of land, which cost her $1,150 and interest, no part of which was paid by her husband, who had not invested any money or property of his own therein. On July 17, 1896, the American Brewing Company proposed to her that she handle its beer, and she entered into a contract, borrowing $1,800 from said company, and securing the loan by a mortgage on said real estate. She appointed her husband her agent to manage the sale of beer purchased under said contract, and he has continued to act as such agent. There was no contract for compensation for his services, but during the time of such agency he took

from the profits of that and other business ventures managed by him for said Rosa such sums of money as he required for his individual and family expenses. On December 12, 1892, Rosa Raben purchased for $900 two lots in Mount Vernon. Afterward she sold all of said land, except forty-six and two-thirds feet front, for $710, which was paid on the original purchase price. The remainder, $190, was paid from money earned by keeping boarders and borrowed from her brother. Afterward she built a dwelling-house on the strip retained, borrowing $1,500 from a building' and loan company, and paying such loan in monthly installments, with money received from her mother, from keeping boarders, and from her brothers. This house is of the value of $2,500, and is occupied as a home. In 1898 Rosa and her brother, on their own account, and against the advice of Theodore Raben, bought ten acres of land at Mount Vernon for $1,200. The cash payment was made out of the profits of the beer business. The land was platted as an addition to said city. Rosa subsequently bought her brother's interest for $1,000, which she paid with money borrowed by herself from the bank, and repaid from the profits of the beer business and the sale of lots. She improved said addition, erecting in all thirteen dwelling-houses, which she sold, doing all the business herself. In 1900 her contract with the American Brewing Company was dissolved, and she made a contract with appellee F. W. Cook Brewing Company, under which she bought and resold beer in the same manner that she had done theretofore. The findings contain a detailed account of her business transactions and of the property acquired, the value of which is $22,300. No books have been kept between the Rabens.

One finding made by the court is as follows: "That, in the transactions aforesaid, the defendant Rosa Raben has received from the defendant Theodore Raben neither money nor property, but she has received his personal services in the conduct and management of her business affairs, espe-

cially in the purchase and sale of beer under the contracts with the American Brewing Company and the F. W. Cook Brewing Company, and his services have contributed largely to the success of such business. During the operations under these contracts, his services have been of the average value of $2,500 per annum. The only capital invested in the business was that of the defendant Rosa Raben, and her purpose in entering upon and continuing the business was to make a living for herself and family and to acquire money and property, and the motive of defendant Theodore Raben was to aid and support his wife and family, and to prevent the fruits of his earnings from being diverted from these ends to the payment of his creditors. By reason of increase in values of real estate, and the growth and prosperity of the beer business and the other ventures of the defendant Rosa Raben, her affairs have prospered, and resulted in greater profit than was anticipated by either of the parties, the real estate alone having more than trebled in value since she purchased it. During the transactions herein mentioned, Rosa Raben had knowledge of the insolvency of said Theodore Raben, and of the debts owing by him.'' A schedule of the debts owing by Theodore Raben is included in the finding. The amount, aggregating $16,000, being the debts of the two partnerships first referred to.

The disposition of the case, under these facts, depends upon whether the husband had a right to give his services and skill to the wife, as was done. The appellants 1. contend that the surplus of the accumulation over the portion needed for the support of the family may be reached in equity and appropriated to the payment of his debts. The point has been the subject of various decisions. It must be considered here in view of the rights possessed by married women. Section one of the act of 1881 (§7851 Burns 1908, §5115 R. S. 1881) abolished all legal disabilities of married women to make contracts, except as therein otherwise

provided. The act of 1853 (§7852 Burns 1908, §5116 R. S. 1881), provides that "no lands of any married woman shall be liable for the debts of her husband; but such lands, and the profits therefrom, shall be her separate property, as fully as if she were unmarried: Provided, that such wife shall have no power to incumber or convey such lands, except by deed in which her husband shall join."

Section two of the act of 1881 (§7853 Burns 1908, §5117 R. S. 1881) is as follows: "A married woman may take, acquire and hold property, real or personal, by conveyance, gift, devise or descent, or by purchase with her separate means or money; and the same, together with all her rents, issues, income and profits thereof, shall be and remain her own separate property, and under her own control, the same as if she were unmarried. And she may, in her own name, as if she were unmarried, at any time during coverture, sell, barter, exchange and convey her personal property; and she may also, in like manner, make any contracts with reference to the same; but she shall not enter into any executory contract to sell or convey or mortgage her real estate, nor shall she convey or mortgage the same, unless her husband join in such contract, conveyance or mortgage: Provided, however, that she shall be bound by an estoppel *in pais,* like any other person." The only limitation upon her power to bind herself is that she shall not become surety. §7855 Burns 1908, §5119 R. S. 1881. A later act put it within her power to limit such exception. Acts 1903, p. 394, §7856 Burns 1908. See *Ludlow* v. *Colt* (1908), 41 Ind. App. 138.

The wife may in this State enter into a business partnership with her husband. *Anderson* v. *Citizens Nat. Bank* (1906), 38 Ind. App. 190. She may borrow money from him, and he may have his action against her to recover it. *Townsend* v. *Huntzinger* (1908), 41 Ind. App. 223; *Harrell* v. *Harrell* (1889), 117 Ind. 94. He may act as her agent, and bind her by note. *Taylor* v. *Angel*

(1904), 162 Ind. 670. The agency is governed by the same principles which apply to other agencies. *Runyon* v. *Snell* (1888), 116 Ind. 164, 9 Am. St. 839.

It is true, of course, that in determining whether fraud exists in a given transaction, the relation is taken into account, but the ancient policy which recognized but one person, and that person the husband, has passed. The wife now is cheerfully accorded rights which would have shocked the consciences of the chancellors who delivered some of the opinions relied upon by the appellant.

The exact question made was decided in this State adversely to appellant's insistence so long ago as 1875, although the writer of the opinion disclaimed such decision. In *Cooper* v. *Ham* (1875), 49 Ind. 393, the text of Bump, Fraudulent Conveyances, p. 269, under which appellant would be entitled to recover, was set out and criticised, and a review of the cases cited in the then current edition of the work made. The facts before the court were, that when the property (a mill) was acquired by the wife the husband was destitute of means. The title was vested in the wife by third parties, so that the same might not be taken for his debts. She then employed him as her agent to operate the mill. The opinion was, in part, as follows: "But it is argued that the fact that George Ham acted as the agent of his wife in the purchase, erection, and operating of the mill, affords very strong if not conclusive evidence that the transaction is fraudulent. The position is wholly unfounded. Mrs. Ham had the undoubted right to employ her husband to act as her agent in operating the mill, and such employment is not proof of an attempt on her part to defraud his creditors. It is equally well settled that she is entitled to the proceeds and profits of the mill. * * * George Ham has the right to give his personal services and skill to the management of his wife's property, without any other compensation than the support and maintenance of himself and family. In the present case, there has been no

accumulation of other property resulting from the profits of the mill, nor has the mill been paid for; but there are debts against it, and liens resting upon it. If these debts are paid, and the liens discharged, the question which is considered in several of the foregoing cases may arise, and that is, whether the husband can, by his labor and skill, add to and increase the separate property of his wife, without giving his creditors the right to have the proceeds and profits apportioned between themselves and the wife. Or if the earnings of the husband should be invested in other property, in the name of his wife, or if there should be money coming to him for his services and skill, which could be reached by a proceeding in attachment or supplementary to execution, the question discussed in many of the above cases would arise; but these questions are not now before us, and we decide nothing in reference thereto.'' While the court by the last clause quoted professed to restrict its decision, yet it affirmed a judgment for the wife, and the facts did show an accumulation created by the husband's labor and skill, and applied to the satisfaction of a mortgage on said property. It could not possibly be the law that the earnings of the husband belong to his creditors when used to purchase real estate by his wife, and that they belong to the wife when she uses them only to pay mortgages secured upon the same real estate; so that the point now mooted was in fact decided. The distinction between those cases in which an accumulation is held for the husband's debt and those in which no equity exists upon which to base a liability is well expressed by the Wisconsin supreme court in the case of *Mayers* v. *Kaiser* (1893), 85 Wis. 382, 396, 55 N. W. 688, 21 L. R. A. 623, 39 Am. St. 849: ''The cases that hold or intimate an opinion that in a court of equity an apportionment of profits or division of property may be had at the suit at the husband's creditors, will be found to rest upon the ground of community or blending of the money or property of the husband, as well as his labor, with the property of the wife in some business venture

or enterprise in which there is a common participation in or use of the profits; and we have met with no case in which the bare fact that the time, skill, and labor of the husband devoted to the business of the wife, has been held to give rise to such an equity.''

In the case at bar there is community of neither property nor partnership. There is therefore nothing from which an equity in favor of the husband's creditor against the wife can be deduced. Suppose the insolvent and unsuccessful husband had been employed by some third person at a grossly inadequate salary, and had continued in such employment these years, his employer profiting greatly through the skill and devotion thus purchased. Would anyone suspect that the creditors of the employe could now recover the difference between the wages paid and the profits made? Why should the wife not have an equal right to give her husband employment that a stranger has? It is true that no stipulated wage has been paid by Mrs. Raben, but, at the time the employment began, the support of the family may have been as much more than the market value of the husband's services as it was less later. At any rate, the compensation was a matter to be determined by the parties themselves. Again, reverse conditions: Suppose a woman had acquired insolvency and experience in the millinery trade (as some of them have done), and subsequently found a husband willing to invest his share of his father's estate in a stock of millinery, and wise enough to put the wife in charge, with no other contract than that she should take such money out of the business as she needed, would it be suspected that his competence so acquired could be taken in equity to pay debts contracted by the wife in her own business twenty years earlier? The entire question is whether the property and business in question really belonged to the wife. *Mayers v. Kaiser, supra.* When this fact is found in her favor, as it is in the case under discussion, but one conclusion can follow, as is shown by

many decisions in this State. The husband did not put anything which was subject to sale on execution, or which could be reached by his creditors, into the making of the estate. *Cooper* v. *Ham, supra; Stone* v. *Brown* (1888), 116 Ind. 78; *McLean* v. *Hess* (1886), 106 Ind. 555.

In the case of *Stone* v. *Brown, supra,* where the wife procured title to the lands of the husband encumbered to their full value, paying therefor with money given to her by her father, and money received from the sale of crops thereafter raised on the land by the joint labor of herself and husband, it was held that her title was complete and the husband's creditors not harmed. The court said: "So far as the purchase money was paid from the proceeds of the crops raised on the land after it was conveyed to Mrs. Brown, even though her husband assisted in producing the crops by managing the farm, the payment was nevertheless, in contemplation of law, made by her." See, also, *Scott* v. *Hudson* (1882), 86 Ind. 286; *Stout* v. *Perry* (1880), 70 Ind. 501; *Montgomery* v. *Hickman* (1878), 62 Ind. 598.

A review of cases from other jurisdictions, in which the question involved in this appeal has been discussed or decided, would be unjustifiable, in view of the fact that it could. be, at the best, no more than a reproduction of the exhaustive notes to be found in the cases of *Morris* v. *Fletcher* (1899), 77 Am. St. 87, and *Mayers* v. *Kaiser* (1893), 21 L. R. A. 623, and at its worst a borrowed synopsis of work accurately done in a more appropriate place.

The case of *Boggess* v. *Richards's Admr.* (1894), 39 W. Va. 567, 20 S. E. 599, 45 Am. St. 938, 26 L. R. A. 537, is a fair illustration of what the judicial mind can accomplish in reaching a desired result. The facts before the court were extreme, and in their consideration the court seems to make the creditor's equity dependent upon whether the wife's business conducted by the husband results in a surplus over family expenses larger than the chancellor approves. The argu-

ment of expediency made by appellant's counsel is not per-
suasive at a time when the bankruptcy law furnishes a means
of legally attaining a release from debts which the debtor
cannot pay.

Judgment affirmed.