Tripp v. Childs.

New trial granted.

[MONROE GENERAL TERM, September 6, 1852. *Selden, T. R. Strong* and *Johnson,* Justices.

———————•◦•———————

TRIPP *vs.* CHILDS and others.

14b        85
39 Mis¹660

Upon a debtor's earnings—the fruits of his labor performed—his creditors have a just claim in law and conscience, for the satisfaction of their demands. And any agreement entered into by the debtor with a view to deprive them of his future earnings, and enable him to retain and use them for his own benefit and advantage, will be declared void.

Although a person may enter into a contract to labor for another during his life, in consideration of his maintenance and support by such person, yet if there are creditors at the time, not only they, but subsequent ones, have a right to inquire into the object and intention of making such an agreement.

On the 10th of September, 1839, E. C., a physician and surgeon, residing at M. and engaged in the practice of his profession, and able to earn in his business from $100 to $200 per month, entered into a contract with his son L. D. C., who resided at Baltimore and was not a physician and surgeon, but was engaged in other pursuits, by which the father agreed to continue his practice at M. and prosecute it faithfully, as the servant of the son and for his benefit, and to keep an accurate account of his earnings during his natural life; and the son agreed to pay his father $60 per month for his services while he was able to practice, and $10 per month for such time as the father should be sick and unable to practice. The father was to render an account of his earnings, at the end of each year, and was to collect the accounts, and hold the avails for the benefit of the son, retaining his compensation out of the same. The father was appointed the agent of the son, and either party was at liberty to put an end to the contract by giving two weeks' notice in writing. On the 3d of September, 1841, the parties entered into a new agreement, substantially like the former, in all respects, except that in the latter, the son, instead of paying a stipulated sum, agreed to provide every thing necessary for the support and comfort of his father and mother during life, and to furnish the necessary horses and vehicles to carry on the business. *Held,* that the agreements were fraudulent and void, as against the creditors of the father; and that a judgment creditor, on filing a creditor's bill, was entitled to a decree, authorizing him to collect the amount of his

judgment out of the earnings of the father, in his hands at the time of filing the bill, or which had been previously invested in real estate, or otherwise.

IN EQUITY. This was a creditor's bill, filed in December, 1846, upon a judgment in the supreme court, in favor of the plaintiff, against Augustus B. Childs and Ebenezer Childs, for $102,82, docketed January 1st, 1846. The case was heard on pleadings and proofs. The facts sufficiently appear in the opinion of the court.

*Levi Gibbs*, for the plaintiff.

*R. P. Wisner*, for the defendants.

*By the Court*, JOHNSON, J. The only question, of any considerable moment, in this case, is whether the two agreements dated respectively on the 10th September, 1839, and the 3d of September, 1841, between Ebenezer Childs and his son Lysander D. Childs, were entered into for the purpose of protecting the future earnings of the former in the practice of his profession, from his creditors. If they were made for that purpose, they are fraudulent and void, and his earnings now in his possession and under his control, nominally as the agent of his son, must be applied in satisfaction of his debts. This intent in the present case is to be deduced from the relation of the parties to each other, the nature of the contract, and the facts and circumstances attending its execution and performance. It is admitted in the answers, that at the time of entering into these agreements, Ebenezer Childs was largely indebted to several persons, and that all his estate, both real and personal, had before that time been appropriated to the payment of his debts, leaving a considerable balance unsatisfied. Now although it is true that a creditor has no claim to the future services of his debtor, or upon his skill and ability to labor, as urged by the defendants' counsel, and the law affords the creditor no means to compel the debtor to serve him in satisfaction of his demand, it is also true that upon the debtor's earnings—the fruits of his labor performed—the creditor has a just claim in law and conscience for the satisfac-

Tripp *v.* Childs.

·tion of his demands. And any agreement entered into by the debtor, with a view to deprive his creditors of his future earnings, and enable him to retain and use them for his own benefit and advantage, will be declared void. Although the law will not compel a debtor to labor and earn money to pay his just debts, there is a strong moral obligation resting upon every debtor, to use the strength and skill and talents with which he has been endowed, for that purpose. And while no one is compelled to labor to satisfy a debt against him, no one will be permitted by any contrivance or device to lay by and preserve the fruits of his skill or industry for the future use and support of himself and family, leaving his debts unsatisfied.

There can be no doubt that a person may enter into a contract to labor for another during his life, in consideration of his maintenance and support by such other. The consideration to uphold the agreement would be ample. But if there are creditors at the time, not only they, but subsequent ones, have a right to · inquire into the object and intention of making such an agreement. Courts and juries are then to look into the circumstances attending the transaction, to ascertain the relation in which the parties stand to each other; whether the party employing has any need of such services in carrying on the business in which he is engaged; whether he exercises any care or supervision over the service rendered; whether the employer receives the earnings of the person employed and pays him the stipulated wages, or leaves the employee to maintain and support himself out of his earnings, as others do who are engaged in similar callings or occupations; and whether, in short, it is such a transaction as would be likely to take place in the common and ordinary course of business and dealings amongst men.

What is the case before us? Ebenezer Childs is the father, a practicing physician and surgeon, residing at Mount Morris, in the county of Livingston, engaged in the practice of his profession. Lysander D. Childs is the son, residing in the city of Baltimore, not a physician or surgeon, and having no connection whatever with the business, but engaged in other pursuits. The father, according to his own account, is able to earn in his busi-

ness from $100 to $200 per month.   While the parties are thus situated, on the 10th September, 1839, the father and son enter into a contract, by which the father agrees to continue his practice at Mount Morris and vicinity, and prosecute it faithfully as the servant of the son and for his benefit, and keep an accurate account of his earnings during his natural life, and the son agrees to pay his father $60 per month for his services while he is able to practice, and $10 per month for such time as the father shall be sick and unable to practice.   The father is to render an account of his earnings at the end of each year, and is to collect the accounts and hold the avails for the benefit of the son, and to retain his compensation out of the moneys so collected. The father is appointed the agent of the son, and either party is at liberty to put an end to the contract, by giving two weeks' notice in writing; in which event the accounts are to be settled between the parties within one year thereafter upon the footing of the contract.

On the 3d of September, 1841, the same parties enter into a new agreement, substantially like the former in all respects, except that in the latter the son, instead of paying a stipulated sum by way of compensation, agrees to provide every thing necessary for the support and comfort of his father and mother during their natural lives, in sickness as well as in health, and to furnish the necessary horses and vehicles to carry on the business.   There is no provision in this contract for terminating it at any time.   And it commences by a recital that the father has been deprived of all his estate, both real and personal, except such as is exempt from levy and sale, and is deprived of all means of support for himself and wife, other than what he can derive from his practice in his profession.

This bill was filed about the last of December, 1846, and it is admitted that at that time Ebenezer Childs, the father, in his practice, had accumulated considerable property over and above his support.   He admits in his answer that he has demands in his possession which are good and collectible, to the amount of $1000 or over, which he claims to hold as agent of his son, under the contract.   And in his evidence before the master he

admits that he has paid about $400 out of his earnings, on real estate which he had purchased some two years before, as the agent of his son. It appears from the evidence in the case that the father and son had, on one or two occasions after 1841, looked over their accounts, but there is no pretense that any thing was ever paid over to the son by the father, or that the son was ever called upon to advance any thing under the contract, except that he was the owner of the house in which the father resided.

It must be apparent from the mere statement of the case, that the sole object of this extraordinary arrangement was and must have been to enable Ebenezer Childs, the father, to secure and appropriate his earnings to the future support of himself and his family, and prevent creditors from reaching them in satisfaction of their demands. No other object can reasonably be inferred, or indeed is scarcely conceivable from the facts and circumstances disclosed. In the first place, the service was foreign to the son's business: he had no need or occasion to employ any person to do business in that capacity. In the next place, the father was in no need of any such employment: the son furnished the father with no business to do; the latter found it for himself, and attended to calls as they were made upon him by others. It is unreasonable to suppose that the son desired to make any profit from the services of his father, or that such was his object in entering into the arrangement. But we can readily see that it might be convenient to him to control the earnings of the parent as they should accrue, and thus provide a fund out of which the parent might derive a subsistence when he should become unable, by age or sickness, to follow longer the practice of his profession. However praiseworthy this may be considered, viewed in the light of filial duty or obligation merely, it cannot be permitted to stand when the paramount claims of creditors intervene. If such an arrangement as this, so bald and palpable in every aspect, can be sanctioned and upheld against the claims of creditors, there will be no end to schemes and contrivances on the part of debtors to secure their future earnings and profits to themselves against a day of need; and in truth he must be mal-adroit indeed who should fail in

accomplishing his design.  The substantial security and rights of creditors would be sacrificed to the merest farce imaginable. Whatever the parties to the transaction may say or believe in regard to the honesty or purity of their motives, the facts are undisputed, and the law pronounces as to the intent.  The arrangement interferes with the just rights and claims of creditors, and the law presumes that the parties intended the natural and necessary consequences of their acts, and declares such an arrangement fraudulent and void.  Courts have no discretion, in such cases, to exercise.  They must pronounce the judgment of the law in all cases, and debtors and creditors alike must conform to its unvarying standards.

My opinion therefore is, that the plaintiff is entitled to a decree authorizing him to collect and receive the amount of his judgment out of the earnings of Ebenezer Childs which were in his hands at the time of filing this bill, or which had been paid out or invested for the pretended benefit of Lysander D. Childs, in real estate or otherwise, together with his costs of this suit.

Decree accordingly.

[MONROE GENREAL TERM, September 6, 1852.  *Selden; T. R. Strong* and *Johnson*, Justices.]