## Carrie A. Spencer v. Henry W. T. Mali et al.

1. PRINCIPAL AND AGENT—*Liability for the Agent's Debts.*—A single woman, who has no knowledge of business affairs, may employ an agent who is skilled, capable and experienced, to conduct her business, and leave to him its sole management and control, without the risk of having it taken from her by the creditors of her agent.

**Creditor's Bill.**—Error to the Circuit Court of Cook County; the Hon. Richard S. Tuthill, Judge, presiding. Heard in this court at the October term, 1899. Reversed and remanded. Opinion filed February 26, 1900.

**Statement by the Court.**—Defendants in error obtained a judgment against George W. Powell and William Powell in the Superior Court of Cook County, on which execution was issued and returned in due course by the sheriff *nulla bona*, and filed their creditor's bill against said George W. Powell, the plaintiff in error, Carrie A. Spencer, and others, for the purpose of subjecting to the lien of said judgment certain property held by said Spencer, as it was claimed, in trust for said Powell.

Powell made no defense, and after answers by said Spencer and the other defendants, and replications thereto, the cause was referred to a master to take proofs and report his conclusions. The master, after taking evidence, reported the same, together with his conclusions, to the court, which the chancellor, after hearing exceptions thereto, approved and confirmed by a decree, the findings of which are identical with the findings of the master.

The decree, after finding the rendition of the judgment aforesaid, return of execution *nulla bona*, and that the judgment was still in force and unsatisfied, in substance finds, among other things, not necessary here to be stated, that George W. Powell had, prior to and during the year 1881, been engaged in business in the State of Indiana in the manufacture and sale of knit garments; that he organized the Amazon Hosiery Co., an Illinois corporation, with a capital stock of $25,000, and became its president and a director; that he subscribed for $10,500 of the stock of this corporation, and paid for the same from the assets of his previous business; that he received an annual salary from the corporation of $3,800, and was its active manager and controller; that up to 1885 the plaintiff in error had never owned any property and had never engaged in any business; that Charles A. Spencer, the husband of plaintiff in error and brother-in-law of said Powell, in 1886, established in

Chicago a business similar to the business of the Hosiery
Co., known as the Princess Knitting Works, with a capital
of about $3,000; that in July, 1887, plaintiff in error was
divorced from her husband, who transferred to her, at that
time, the business of said Knitting Works, which was sub-
stantially insolvent, and also paid to her the sum of $4,000
in cash; that in July, 1887, plaintiff in error executed to
said Powell a power of attorney which authorized him to
act for her in every way in carrying on the business of said
Knitting Works and otherwise; that she had nothing what-
ever to do with the business, and never received anything
but verbal reports from Powell as to its condition; that the
Knitting Works was carried on under the name of C. A. Spen-
cer & Co. until in January, 1895, when its net assets were
$176,000; that in the fall of 1896 the Hosiery Co. moved
its plant to Muskegon, Michigan, and the Knitting Works
and Hosiery Co. were consolidated by the transfer of the
former to the latter, and said Spencer received in payment
for such transfer stock in the Hosiery Co. the amount of
about $115,000; that after the year 1887, Powell received
an annual salary of $1,200 for his services to the Knitting
Works; that out of the profits arising from the business of
the Knitting Works said Spencer, acting through Powell,
purchased certain real estate in Edgewater, Cook county, at
a cost of about $20,000, erected a residence thereon, which
she and said Powell and his family have ever since continued
to occupy; that this property is mortgaged for $10,000; that
in 1893, said Spencer purchased other real estate, described
in the decree, from the profits of the business of the Knit-
ting Works, and erected a factory building thereon, the
whole costing about $30,000, and which is mortgaged for
the sum of $20,000; all the business being done with regard
to said purchases and the erection of said building under
the supervision and direction of Powell; that certain stock
in the Hosiery Co. owned by Powell and deposited as col-
lateral security with various of his creditors, was purchased
in the name of Spencer by Powell with the profits of the
business of the Knitting Works, but she never at any time

saw any of such stock; that the business of the Knitting Works and the Hosiery Co. was done by Powell acting on his own independent judgment; that he paid to plaintiff in error from the time he assumed the management of the Knitting Works $50 per month for expenses, and also various of her bills; that he lived rent free in said residence and paid all expenses for repairs and taxes thereon, but made no report thereof to plaintiff in error; that he is skilled and experienced in the business conducted by said Knitting Works, and that the profits derived therefrom are due solely to his management; also that Powell received as an annual salary, $1,200, from the Protection Mutual Fire Insurance Co.

Based upon the foregoing findings, the master concluded that the profits of said business in equity and good conscience were the property of Powell, and the chancellor agreed with the master and decreed that the said real estate with its improvements was subject to the lien of said judgment, and ordered the same to be sold by the receiver, who had been theretofore appointed, and the net proceeds of said sale applied toward the payment of the judgment; also that plaintiff in error convey said stock in the Hosiery Co. to the receiver, and that Powell and plaintiff in error deliver possession of said real estate to the receiver within fifteen days from the entry of the decree. To reverse said decree this writ of error is prosecuted by Carrie A. Spencer.

The findings of fact in the decree as above set forth are substantially sustained by the evidence, and it also appears that the $4,000 in cash paid to Mrs. Spencer by her husband was used by her, through Powell, in the conduct and prosecution of the business of the Knitting Works, but it does not appear that any money of Powell ever went into that business; also, that Powell gave very little of his time to the business of the Knitting Works, for the first four or five years not to exceed an hour a day, except the time spent in selling the product of the factory, which was usually done to a few customers, and in the year 1896 did not require of Powell to exceed ten days. There is no evidence

tending to show that Mrs. Spencer had any knowledge that Powell was indebted to defendants in error or to any other persons. The stock of the Hosiery Co. was increased from $25,000 to $225,000, of which Powell holds only about $500; the remainder, not owned by Mrs. Spencer, is owned by other persons.

REMY & MANN and DAVID J. WILE, attorneys for plaintiff in error.

NEWMAN, NORTHRUP & LEVINSON, attorneys for defendants in error.

MR. JUSTICE WINDES delivered the opinion of the court.

The principal and controlling question presented by this record is whether a single woman, who has no knowledge of business affairs, may employ an agent who is skilled, capable and experienced, to conduct her business, and leave to him its sole management and control, without the risk, in case it yields large profits, of having it taken from her by the creditors of her agent.

We are of opinion that no rule of law or equity requires that any one should be subjected to any such risk, in the absence of a showing of fraud on his part.

As we have seen, the business turned over to Mrs. Spencer by her husband was small, and, as the decree finds, was substantially an insolvent one, though its assets amounted to at least $3,000 if not $3,700. To this business she added the $4,000 in cash which she received from her husband, and there is no evidence whatever that any money of Powell ever went into the business. It was very profitable under the conduct and management of Powell, though he gave very little of his time to it. He was paid a salary, so far as appears from this record, which was entirely reasonable considering the time he gave to the business. He received salaries from the other two corporations by which he was employed amounting to $5,000 per year.

The fact that he failed to make any other than verbal

reports to Mrs. Spencer as to the conduct of the business, does not of itself prove fraud, and in our opinion is entirely consistent with honesty of purpose on his part as well as hers, when the circumstances are considered. She knew nothing of business and knew that Powell was experienced in that line of business, and her capital being small, she might well have trusted to Powell, who was her sister's husband, he furnishing her, as he did, from time to time, from the profits of the business, with money to pay her current expenses and bills, and besides, the money to buy her a residence and subsequently a factory for the conduct of the business. Under such circumstances most any woman not familiar with business or business methods, would most naturally give her agent free rein and full power to do as to him seemed best, and would not be disposed to trouble him with critical or detailed inquiries or written reports with regard to her affairs, which, from visible results by way of money that came when wanted for her own personal needs and was ready to meet the demands of her business as required, appeared all the while to be prospering.

After the most careful reading of the evidence, both in the original and additional abstracts, guided by the able arguments of counsel, we are unable to perceive, in the light of such evidence and the findings of fact by the master and the chancellor, upon what basis they reach the conclusion that in equity and good conscience the property which was the result of the profits arising from the business of Mrs. Spencer, carried on by Powell, should be held to be the property of Powell and subjected to the payment of his debts.

It is argued by defendants in error, in support of the decree, that inasmuch as Mrs. Spencer placed her property and money in the hands of Powell and allowed him to carry on her business, the original capital will in equity be considered as a loan to him, and that its increase, caused by the labor and skill of Powell, should be subjected to the payment of his debts. In support of this contention they cite and especially rely upon the cases of Wortman v. Price,

47 Ill. 22; Wilson v. Loomis, 55 Ill. 352; Robinson v. Brems, 90 Ill. 351; Lachman v. Martin, 139 Ill. 450; and Pease v. Barkowsky, 67 Ill. App. 276.

These cases are all cases of husband and wife, and the decisions are made with express reference to the statute in that regard, and its effect on the common law, which, prior to the statute, gave the husband, upon marriage, title to the personal estate of the wife which came to his possession. After a careful consideration of these cases, we think their doctrine should not be applied to the case at bar, as the relation of husband and wife does not here exist. If the doctrine of these cases should be extended to persons not occupying the marital relation toward each other, there could never be any safety in any one employing an agent to carry on a mercantile or manufacturing business and leave to such agent the full and untrammeled control and management thereof.

In the Lachman case, *supra*, it was held that a wife may avail herself of the services and agency of her husband in the conduct of her business, without subjecting the profits arising from his management to the claims of his creditors, but that an insolvent debtor can not use his wife's name as a mere device to cover up and keep from his creditors the assets and profits of a business which is in fact his own, and the court says:

"It must clearly appear that the wife is the *bona fide* owner of the capital invested in the business, and that the accumulations which result from the conduct of the business are the legitimate outcome of the investment of her property."

In the case of Murphy v. Nilles, 166 Ill. 107, which is also a case of husband and wife, the above language from the Lachman case is quoted with approval by the court, but it was held in the case there considered that the husband used the wife's moneys in "shrewd speculations on his own account," and for that reason they were subject to the payment of his debts.

In this case the proof is clear that Mrs. Spencer was the *bona fide* owner of the capital invested in the Princess

Spencer v. Mali.

Knitting Works, which was her own business, conducted in her own name, on her own account, and that the profits arising from the conduct of that business were the legitimate outcome of the investment of her property and money, through the services of her agent, who was paid an adequate compensation by her for his work. The fact that the business was remarkably successful should not militate against her, especially so when it fails to appear that she knew anything in regard to Powell's indebtedness, or that either she or Powell resorted to any concealment or subterfuge calculated to deceive or mislead any one.

The case Tripp v. Childs, 14 Barb. 85, is also specially relied upon by counsel for defendants in error. It appears in that case that the very purpose of the contract under consideration, being that of a father, a physician, with his son, to do a medical practice for and in the name of the latter, was to protect the father from the claims of his creditors, of which the son was well aware, and there was no pretense that the father, who professed to be acting as agent for the son, ever paid over any proceeds of the business, and, moreover, the court say of the business done by the father for his son, "The service was foreign to the son's business; he had no need or occasion to do business in that capacity."

We do not regard the case as at all applicable here. Mrs. Spencer came into a business of which she knew nothing, and was in immediate need of some competent and experienced person to conduct it for her, and had a perfect right to, and it was the most natural thing imaginable that she would seek the services of such a person as Powell to conduct her business.

It is also claimed that the findings of the master, having been concurred in by the chancellor, will not be disturbed unless they are manifestly against the weight of the evidence. We think the rule invoked, even if it may be said to go to the extent claimed, is not applicable here. This is not a case of conflicting evidence, but rather of conclusions to be deducted from the evidence, which is not conflicting.

It is elementary that when fraud is charged as a basis for relief, it must be proved. From the evidence in this record and the facts found by the master and the chancellor, we do not think that there can be deduced that clear inference of fraud which is necessary to justify the decree rendered.

It is also claimed that the record is not complete, and therefore that this court, by reason thereof, will not consider the merits. The transcript of the record is certified to be according to *præcipe* filed. The *præcipe* shows that the clerk was directed to include in the transcript all items of the record (specifying the same) necessary to make a complete record. We regard it as sufficient to justify us in passing upon the merits of the case.

The decree of the Circuit Court is reversed, but inasmuch as the bill prays for an accounting between Powell and Mrs. Spencer to ascertain what, if anything, was due to the former from the latter, the cause is remanded for the purpose of taking such accounting, if the defendants in error should so be advised. This disposition of the case makes it unnecessary to consider other points made by defendants in error. Reversed and remanded.