KENDALL, Receiver, Appellant, vs. BEAUDRY and another, Respondents.

*May 15 — June 21, 1900.*

*Insolvency: Husband and wife: Continuation of business by wife: Rights of husband's creditors.*

A husband failed in the logging business, and, in good faith, a third party advanced the wife, who had shown herself thrifty and energetic and able to conduct a small store and hotel, money to continue the business, on condition that she secure the skill and services of her husband, which she did, paying him a salary. *Held*, that such business belonged to the wife, and hence the profits accumulated therefrom, though in a large measure due to the husband's skill and services, are also hers, and are not subject to be taken for the husband's debts.

APPEAL from a judgment of the circuit court for Brown county: S. D. HASTINGS, JR., Circuit Judge. *Affirmed*.

The plaintiff, appointed as receiver in supplementary proceedings upon execution against *August Beaudry*, commenced this action in 1896 against the defendants to recover from *Zelia Beaudry* moneys and property in her hands claimed to belong to *August*, her husband.

The facts disclosed, so far as material, were that *August Beaudry* had been a moderately successful laborer and oper-

ator in timber lands up to 1888. He had at that time a homestead, upon which was situated, in one building, a store and saloon operated by himself, the residence of himself and wife, and a boarding house or hotel conducted by her under an arrangement between them whereby she had the proceeds. This homestead was incumbered for about $1,200, and was worth something over $2,000. *August* was engaged also in the business of buying standing timber and timber lands, more especially cedar, and logging the same, in which business he was an expert. In 1888 he suffered a severe loss by fire, and also suffered a disabling personal injury, by the first of which he became insolvent. His creditors commenced to attack him; the defendant *Zelia* became distressed and threatened to separate from him, and do for herself, if that was to continue; whereupon, on February 5, 1889, he transferred to her the entire homestead premises. Thereafter, until sometime in the fall of 1890, she continued to run the hotel, and the store and saloon; not, however, attempting to engage in any lumbering operations. He made such adjustments and apportionments of property among his creditors as he could; turned out to some of them such stocks of lumber or other things as he had on hand, and to others accounts which he had against farmers in the vicinity, and to others he gave mortgages upon the stock in his store to more than its value and upon certain outlying real estate. In the fall of 1890 he transferred to his wife the stock of goods in the store upon her assumption of debts secured thereon of considerably more than the value of the stock. She meanwhile had accumulated an amount somewhat indefinitely stated at $700 or $800 from the proceeds of the hotel business, some of which she used in increasing the stock in the store. Thenceforward all purchases for the store were made in her name, and she operated the same. Shortly thereafter one of the firm of Wright Bros., who had been large customers of cedar

poles and posts from the defendant *August*, visited the *Beau-drys*, examined the situation, saw that it was impossible for *August* to do any business himself, and proposed to *Mrs. Beaudry* to advance her money to purchase cedar lands, the title to be taken in the name of the Wrights, and the product thereof to be turned over to them, they to pay therefor at a price, and she to have whatever could be made in that way, provided she could secure her husband's skill and services, which were deemed valuable. The defendant *Zelia* was a woman of considerable business capacity, and evidently of much independent judgment and opinion. She assented to this arrangement, and in the following January it commenced, the Wright Bros. advancing to her considerable sums, for which she made herself liable. She purchased the supplies necessary, and the logging outfit, and employed her husband at an agreed salary, differently stated at $100 per month and $50 per month; also allowing him to continue the occupation of the saloon upon the homestead premises, which he ran as an enterprise of his own. This lumbering business continued up to the time of the commencement of suit, and therein the defendant accumulated substantial profits, the Wrights extending to her considerable credit, not only in that business, but for other purposes, furnishing the money for her to pay off the debts of her husband against the store, which she had assumed, and to make certain other investments not here called in question. From time to time she paid moneys or securities to her husband to apply upon his agreed compensation, which were by him turned over to various of his creditors. He has never treated as his the moneys or property of the business conducted under her name, or assumed to use the same for his own benefit.

The question principally litigated was as to this lumber business, whether it was in fact the business and property of *Zelia*, or whether her name was merely used therein as a

Kendall vs. Beaudry and another.

cover for his business, to keep the property and profits thereof out of the reach of his creditors. The court found that the business and property were hers, and entered judgment for the defendants, from which the plaintiff appeals.

For the appellant there were briefs by *Greene, Vroman, Fairchild, North & Parker,* and oral argument by *Geo. G. Greene.* They contended, *inter alia,* that placing the cedar business and its proceeds in the name of the wife was a fraud on creditors. *Feller v. Alden,* 23 Wis. 301; *Howie v. Price,* 31 Wis. 82; *Dayton v. Walsh,* 47 Wis. 113; *Mayers v. Kaiser,* 85 Wis. 382; *Knapp v. Smith,* 27 N. Y. 277; *Abbey v. Deyo,* 44 N. Y. 343; *Martin v. Remington,* 100 Wis. 540; *Ansorge v. Barth,* 88 Wis. 560. Because of the opportunity for and difficulty of proving fraud, the burden is on the wife, in such cases, to prove good faith and valuable consideration paid. *Fisher v. Shelver,* 53 Wis. 498; *Horton v. Dewey,* 53 Wis. 410; *Gettelman v. Gitz,* 78 Wis. 439; *Le Saulnier v. Krueger,* 85 Wis. 214. In such cases the vital question is whether the transaction is sincere or a scheme to keep the husband's property from his creditors. *Hyde v. Frey,* 28 Fed. Rep. 819, 823; *S. Hamill & Co. v. Augustine,* 81 Iowa, 302; *Farmer's Bank of Ky. v. Marshall,* 35 S. W. Rep. 912; *Robinson v. Brems,* 90 Ill. 351; *Hamilton v. Lightner,* 53 Iowa, 470; *Spering v. Laughlin,* 113 Pa. St. 209; *Keeney v. Good,* 21 Pa. St. 349; *Baxter v. Maxwell,* 115 Pa. St. 473; *Trefethen v. Lynam,* 90 Me. 376; *Ansorge v. Barth,* 88 Wis. 560, 563.

For the respondents there was a brief by *Wigman, Martin & Martin,* and oral argument by *P. H. Martin.*

DODGE, J. The evidence is voluminous, conflicting, and confused, and we cannot say that the finding of the court is antagonized by any clear preponderance thereof. The appellant contends that all the earnings in that business are the fruits of defendant *August Beaudry's* skill and services, and therefore should belong to his creditors. This is by no

Kendall vs. Beaudry and another.

means strictly an accurate statement of the result of the evidence. Doubtless *August Beaudry's* skill and knowledge of the cedar business were an important element therein, but those alone could not have accomplished the result; for capital was needed in order to make them effective, and capital could not well have been secured by him, certainly not from those who advanced it to the defendant *Zelia.* His situation as a judgment debtor to considerable amounts was such as to deter any investor from starting him in any business of his own; for, however carefully the properties of that business might be preserved in the hands of the lender, the business would be at all. times subject to interruption, disturbance, and harassment from those creditors. *Zelia,* on the other hand, invited much more confidence in that respect. She had shown herself to be thrifty and energetic, was able to obtain sufficient measure of credit to supply her camps and to conduct a moderate business, and to this confidence in her in no inconsiderable degree was due the opportunity to render her husband's services productive and useful.

While it has been held, and is undoubtedly the law,. that a husband cannot screen the fruits of his own services and exertions under the mere name of another, be that other wife, son, or any one else, if those fruits of his labor are really his (*Tripp v. Childs,* 14 Barb. 85; *Hyde v. Frey,* 28 Fed. Rep. 819), it has nevertheless been decided many times that if the enterprise is in fact that of the wife he may give or hire to her his skill and services, and the fruits of the enterprise will still be hers; that a man's labor cannot be coerced or controlled by his creditors, but may be disposed of by himself, however insolvent he may be (*Dayton v. Walsh,* 47 Wis. 113; *Mayers v. Kaiser,* 85 Wis. 382; *Ansorge v. Barth,* 88 Wis. 553; *Aldridge v. Muirhead,* 101 U. S. 397). These authorities insist on good faith. In ascertaining the existence of this element, the question is whether the debtor

does in fact give or hire his services to another, the fruits thereof to belong to that other, or does he merely exert himself under the color of another's name, with the understanding or purpose that the fruits of his exertion shall be his, but screened by that other's name from his creditors. The former situation satisfies all that is meant by the expression "good faith" in this connection. *Mayers v. Kaiser*, 85 Wis. 396; *Hyde v. Frey*, 28 Fed. Rep. 819. He may be led to so act because of the hopelessness of attempting to devote his efforts to a business of his own, where they would be rendered abortive by the prompt attack of creditors as soon as they became at all productive. Such motive or reason is not inconsistent with the good faith of the transaction. This distinction disposes of the suggestion made by appellant that the learned circuit court took a wrong view of the law, as evidenced by the expression in his opinion: "They had a right to make it her business, and to make it hers for the express purpose of preventing *August's* creditors from getting the proceeds of it, so that none of his nonexempt assets went into it." In the light of the evidence, we read this remark as indicating no more than the consideration above enunciated,— that the peril of interference from creditors may be the reason for an insolvent devoting his services to another instead of attempting to use them for his own benefit, without destroying the good faith of the transaction or that other's title to the fruits of the business. While, of course, transactions between husband and wife should be carefully scrutinized, in the case at bar we are satisfied that the finding by the trial court that the cedar business was in fact that of the wife is sustained by the evidence. Thence results the conclusion that the profits accumulated, though in large measure due to the husband's skill and services, are also hers, and not subject to his debts.

Agreeing, as we do, with the circuit court as to the *bona fides* of *Zelia's* ownership of the lumbering business, no

other issues of importance are presented by the record. The transfer of the stock of goods to her is not assailed except as it is claimed that the consideration paid therefor, considerably exceeding its value, was paid out of the proceeds of the lumbering business, which belonged to him. Having decided that such proceeds did not belong to him, this contention fails. It is not suggested that any rights exist in the plaintiff by reason of the transfer to the defendant *Zelia* of the homestead. Upon the facts found, therefore, it does not appear that the defendant *Zelia* has in her possession or under her control any moneys or property in trust for or belonging to the defendant *August*, or to which the plaintiff as receiver is entitled.

*By the Court.*— Judgment affirmed.