BUCKLES v. WAGGONER.

No. 32949.    Oct. 7, 1947.

Rehearing Denied Jan. 27, 1948.

*188 P. 2d 873.*

Wilkinson & Smith, of Sapulpa, for plaintiff in error.

C. R. Nixon, Logan Stephenson, F. C. Swindell, Harry L. S. Halley, and O. C. Lassiter, all of Tulsa, for defendant in error.

DAVISON, V.C.J.    This is an action of equitable cognizance wherein the plaintiff, as the judgment creditor of C. O. Buckles, seeks to subject property in the name of R. A. Buckles, the wife of the debtor, to the payment of the judgment. Judgment of the trial court was for plaintiff, and defendant has appealed.

In 1924, 1925, and 1927, C. O. Buckles became indebted to plaintiff in the aggregate sum of $25,500, evidenced by three promissory notes bearing interest at 8 per cent per annum. He was engaged in the business of oil property development and was being financed

to a large extent by a Mr. Haverback of New York. By 1930 Buckles' financial situation had become such that Haverback would not trade with him further unless he took bankruptcy, which he refused to do. But Haverback stated he was willing to deal with Buckles' wife, R. A. Buckles, the defendant herein. The subsequent method of operation was this: An oil and gas lease would be secured by Buckles in his wife's name, without money consideration, but upon a promise to drill; Haverback financed the drilling. If the lease was unproductive, that was the end of it; but if it was productive, the lease was owned equally by her and Haverback. As her contribution, she mortgaged her interest and assigned the oil runs as security for sufficient funds to properly equip the leases.

In 1932, a corporation, Black Jack Oil Company, was organized, its capital stock being owned by Buckles, his wife, and one H. T. Frost, and one John Durfee; the Buckles owning only one share each, although Mr. Buckles was president and his wife, vice president. The company was an operating company and at no time owned any property. It employed Buckles at a salary of $200 per month and had other expenses aggregating some $25 per month. All items of expense were paid by advancements made by Haverback.

This situation continued until 1945 when this suit was brought to subject equipment and leases, owned by Mrs. Buckles and acquired by this mode of operation, to the payment of Buckles' indebtedness to plaintiff which, a few months earlier, had been reduced to judgment in the amount of $41,750.97, plus attorneys' fees of $2,721.34. At different times, after this arrangement in 1930, Buckles had acquired some leases in his own name and had so operated them without the aid of Haverback, but for all practical purposes had made no profit from them. By computation it appears that subsequent to 1930 Buckles had paid plaintiff interest in the amount of some $10,000.

Significant are certain facts appearing herein. At the time of the business arrangement in 1930, Buckles owned no property, of the benefit of which plaintiff was deprived. None of Mrs. Buckles' property, herein involved, was conveyed to her by her husband. The acquisition of the property would have been impossible without the financial backing of Haverback and such investment was made only upon condition that Mrs. Buckles owned the other interest in all leases. There was no concealment of any of the facts and plaintiff allowed this operation to continue for some 15 years before taking any action.

The proposition herein presented has not heretofore been before this court, nor has our attention been called to, nor do we find, upon independent investigation, any recent cases that are analogous.

In the case of Kendall v. Beaudry, 107 Wis. 180, 83 N.W. 314, a situation very similar to the instant case was under consideration. In discussing the matter the court said:

" . . . In ascertaining the existence of this element (good faith) the question is whether the debtor does in fact give or hire his services to another, the fruits thereof to belong to that other, or does he merely exert himself under the color of another's name, with the understanding or purpose that the fruit of his exertion shall be his, but screened by that other's name from his creditors. The former situation satisfies all that is meant by the expression 'good faith' in this connection. Mayers v. Kaiser, 85 Wis. 396, 55 N.W. 688, 21 L.R.A. 623; Hyde v. Frey (C.C.) 28 Fed. 819. He may be led to so act because of the hopelessness of attempting to devote his efforts to a business of his own, where they would be rendered abortive by the prompt attack of creditors as soon as they became at all productive. Such motive or reason is not inconsistent with the good faith of the transaction . . . ."

To the same effect, though dealing with a somewhat different state of facts,

628

is the case of Aldridge v. Muirhead, 101 U. S. 397, 25 L. Ed. 1013, which was cited by the Wisconsin court. Therein the Supreme Court of the United States used the following language:

" . . . While the negotiations were all made by the husband, the titles were openly taken in the name of the wife. The appellants were called on to answer whether the purchase money, or any part of it, was paid from the means of the husband, and they stated under oath, most unequivocally, that it was not. This throws the burden of proof on the complainant and, after a full and careful examination of the whole case, we are unable to find that anything which the creditors of the bankrupt could have subjected to the payment of their debts ever went into the property that the wife now holds. Undoubtedly, the husband's services were largely the cause of the fortunate results; but, so far as we have been able to discover, they were devoted to the management of what was both, in law and in fact, her separate property. Her accumulations from that source do not belong to his creditors.

"To our minds, it is an important element in this case that the transactions out of which this suit arose commenced thirteen years or thereabouts, before any attempt was made to impeach them. They were always open, and no effort at concealment was ever made. All deeds were taken in the name of the wife and promptly put on record. The husband's connection with all the purchases and sales must have been well known . . . . "

The case at bar differs materially from those wherein the husband secures credit because of his ostensible ownership of the property and those wherein he owns the property in his own name at the time of making the debt, then later conveys it to his wife without consideration. The foundation of the acquisition of the property by the defendant herein was the financial backing given by Haverback, which he gave because of defendant's ownership of the leases and equipment. It is true that, because of the skill and ability of defendant's husband, the properties materially increased in value, but he was being paid a monthly salary of $200 for the same. Perhaps he would not have worked for that salary except for the fact that it was probable his wife would also profit therefrom. But that is not the test by which the applicability of her property to the payment of his debts is determined.

The record discloses no concealment of facts on the part of any of the parties. Everything was done aboveboard and the plaintiff allowed the operation to continue some 15 years without objecting in any manner. Plaintiff, in order to recover herein, had to prove either or both of two situations: First, that the property was in reality that of C. O. Buckles, though the title thereto was in his wife; or second, actions on the part of both husband and wife, which were a fraud on the plaintiff. Too well settled in this jurisdiction to require citation of authorities is the rule that the burden of proving fraud rests on the party alleging it and the same will never be presumed.

Although transactions between husband and wife will be closely scrutinized, yet this relationship does not in itself establish any element of fraud. The plaintiff has not shown by the clear weight of the evidence that she is entitled to the relief prayed for.

The cause is reversed and remanded, with directions to enter judgment for the defendant.

HURST, C.J., and RILEY, BAYLESS, and GIBSON, JJ., concur. CORN, J., dissents.