## J. E. Dazey v. W. H. Jeffers.

1. INNOCENT HOLDER FOR VALUE—*when not protected against defense of maker of promissory note.* One who has received before maturity the transfer of a promissory note for value and without notice, is not protected as to any defense which grows out of the same transaction as that which gave rise to the making of such note, unless the same was actually indorsed before maturity.

Action of assumpsit. Appeal from the Circuit Court of Moultrie County; the Hon. JAMES W. CRAIG, Judge, presiding. Heard in this court at the November term, 1905. Affirmed. Opinion filed June 8, 1906.

SENTEL & WHITFIELD, for appellant.

JOHN E. JENNINGS, for appellee.

MR. PRESIDING JUSTICE RAMSAY delivered the opinion of the court.

J. E. Dazey, appellant, brought suit against W. H. Jeffers, appellee, upon a promissory note made by appellee to one H. Janss and by Janss sold to appellant, for the sum of $60 and interest. Appellee defended upon the ground that there was a total failure of consideration for the making of said note; and that it was assigned to appellant after and not before maturity. There was a verdict and judgment in favor of appellee, and appellant appealed.

The former of said two issues, viz., the failure of consideration, was one exclusively for the jury, and the finding in

favor of appellee was not against the manifest weight of
the evidence, and we are, therefore, not disposed to review
the evidence upon that subject.

Upon the second proposition appellant contends that
said note was duly assigned to him before maturity, while
appellee claims that the note was not indorsed to appellant
until after it became due, and therefore that appellant
holds the same subject to the defense of failure of consid-
eration.

It appears from the evidence that one Warren Winslow,
who represented or had some connection with the "Illinois
State Medical and Surgical Institute," obtained the said
note from appellee for services promised to be rendered to
appellee in perfecting a cure of his son; he took the note
in the name of said H. Janss, who was the treasurer of said
institute.    Afterward, and before maturity, Winslow sold
this note with others to appellant and received payment by
check therefor.    Whether or not an indorsement was made
at the time of the sale and delivery of the note by Winslow
to Dazey, or was made after maturity as claimed by Jef-
fers, was purely a question of fact for the jury to deter-
mine.

Dazey testified that the note was indorsed to him by
Winslow, who wrote the name of H. Janss upon the back
of the note, upon the day he bought it; while Otto Jeffers,
the son of appellee, and the one for whose medical treat-
ment the note had been executed, testified that he went to
the bank of appellant on the fourteenth day of May, 1904,
just a few days before maturity of the note, when he was
shown the note by Dazey, and that at that time there was
no indorsement or assignment whatever upon the note
from Janss to Dazey, and that at that time he, Otto, notified
Dazey that there was a contract or agreement that went
with the note, and that his father would not pay it.    He
further testified that on the nineteenth day of such month
he again went to the place of business of appellant, when
he found that Dazey had gone to Chicago and had taken
the note with him.

Appellant took the deposition of Winslow, who testified, in substance, upon this question of assignment that: "The indorsement on the back of the note 'without recourse H. Janss,' is in my handwriting. H. Janss told me to indorse it, and such notes, in his name. I sold it a few days after I obtained it from Jeffers to Dazey, who paid me for it."

It occurs to us that it is very strange that Winslow in no way was asked upon what day or date he wrote the indorsement upon the back of the note. Jeffers had made and filed an affidavit in the case that the note in controversy was not duly assigned by the said Janss *before maturity*.

By that means the issue was sharply and clearly presented that the note had been assigned, if at all, after maturity, and yet, although appellant took the deposition of Winslow to be read as evidence in the case, he failed utterly to ask a single question that would enable Winslow to tell *when* the assignment in fact was made. It will not do to say that such failure was an oversight. Under some circumstances such a claim would have some force, but not in a case where the date of the assignment is unequivocally challenged by affidavit or sworn pleadings.

This failure to ask Winslow to give his testimony upon the most important feature of the case may well have impressed the jury with a want of good faith upon the part of appellant. Upon a consideration of all the evidence, we think the jury were warranted in finding that there was no written indorsement of the note to appellant, as claimed by him.

The remaining question then is this: Must a negotiable instrument be *indorsed* before maturity to cut off a defense arising out of the same subject-matter as that which gave rise to the note, or can the transferee of a note who takes it in good faith before maturity, have it indorsed to him after maturity, or after he has had notice of failure of consideration, so that the effect of the subsequent indorsement will relate back to the time of the transfer and shut out all

equities the same as if it had been indorsed at the time of the transfer?

Section 4 of chapter 98 of the Revised Statutes provides that "any note * * *, made payable to any person named as payee therein, shall be assigned by indorsement thereon under the hand of such person and of his assigns, in the same manner as bills of exchange are, so as absolutely to transfer and vest the property thereof in each and every assignee successively."

This section clearly means that an assignment can be made only by indorsement under the hand of the assignor; while section 9 of the same act makes the "failure of consideration" a good defense in a suit upon a note: provided that said section shall not be construed to impair the right of any *bona fide* assignee of such instrument, when *such assignment* was made before such instrument became due.

In Beard v. Dedolph et al., 29 Wis. 136, it was held that a subsequent indorsement would relate back to exclude any equity arising *outside* of the note itself; but that as to such as did arise out of the note itself an indorsement, as well as a delivery, was necessary.

In Haskell v. Mitchell, 53 Me. 468, it was held that, in order to shut out such equities, the indorsement must be made before maturity.

We hold that as to any defense that grows out of the same transaction as that which gives rise to the making of the note, it is essential that the note should be indorsed under the hand of the payee before maturity in order to cut off such defense. To defeat a plea of set-off, it would be enough, perhaps, to show the *bona fide* transfer before, and an indorsement after maturity, as such defense may have no relation to the subject-matter of the note; but in a case where a failure of consideration for the note sued on is proven, such a rule cannot obtain; it is essential to show not only a transfer, but an indorsement in writing, before maturity.

Other errors have been assigned upon this record by appellant; but, as the view we have taken of the questions

hereinbefore discussed disposes of the case upon its merits, we do not deem it necessary to extend this opinion.

There is no reversible error in the record and the judgment is affirmed.

*Affirmed.*