(February 24, 1925.)

G. ARLON MATTHEWS, Appellant, v. BOISE CITY NATIONAL BANK, a Corporation, and JAMES D. AGNEW, Sheriff, Respondents; GUY E. MATTHEWS, Interpleaded.

[233 Pac. 998.]

TITLE TO REAL PROPERTY—SUFFICIENCY OF EVIDENCE TO SUPPORT FINDINGS AND JUDGMENT.

   Evidence examined and *held* sufficient to support findings and judgment.

APPEAL from the District Court of the Third Judicial District, for Ada County. Hon. Raymond L. Givens, Judge.

Action to quiet title. Judgment for defendants. *Affirmed.*

T. S. Risser, for Appellant.

Fraud must be proved by clear and convincing evidence. (*Gottlieb v. Thatcher*, 151 U. S. 271, 14 Sup. Ct. 319, 38 L. ed. 157; *Nelson v. Hudgel*, 23 Ida. 327, 130 Pac. 85; *Kerns v. Wash. Water Power Co.*, 24 Ida. 525, 135 Pac. 70.)

The evidence must be of such a character and degree as will justify reasonable men in arriving at a conclusion that

fraud existed. (*Hopkins v. White,* 20 Cal. App. 234, 128 Pac. 780; *Foster v. McAlester,* 114 Fed. 145, 52 C. C. A. 107; *Koopman v. Mansolf,* 51 Mont. 48, 149 Pac. 491; *Guaranty Security Co. v. Coad,* 114 Wash. 156, 195 Pac. 22, 197 Pac. 326; 27 C. J. 820, 821.)

"The presumption of integrity of purpose in their transactions is not overcome, except by direct or circumstantial proof sufficient to produce a conviction of the existence of fraud." (*Winfrey v. Winfrey,* 150 Ky. 138, 150 S. W. 42.)

"Slight circumstances or circumstances of an equivocal tendency, or circumstances of mere suspicion, leading to no certain results, are not sufficient to establish fraud. They must not be, when taken together and aggregated, consistent with an honest intent. If they are, the proof of fraud is wanting." (*Foster v. McAlester,* 114 Fed. 145, 52 C. C. A. 107; *Citizens' Bank v. Wilfong,* 66 W. Va. 470, 66 S. W. 636; *Tischler v. Robinson,* 79 Fla. 638, 84 So. 914.)

The evidence showing conclusively that the plaintiff's money was used in the purchase of the lots and that his funds secured by mortgage upon the lots were used in the building operations will defeat the creditors' claim against the property. (*Ford Lumber & Mfg. Co. v. Curd,* 150 Ky. 738, 150 S. W. 991, 43 L. R. A., N. S., 685; *Tucker v. Weathersbee,* 98 S. C. 402, 82 S. E. 638; *Humbird Lumber Co. v. Doran,* 24 Ida. 507, 135 Pac. 66.)

"Fraud is never presumed, but must be established by clear and convincing evidence, and this is especially true where a party assails the integrity of a written instrument." (*Nelson v. Hudgel, supra; Kerns v. Washington Water Power Co., supra.*)

The evidence to prove a conspiracy in a civil action must be full, clear and satisfactory, and must be proven by a preponderance of the evidence. The evidence must do more than raise a suspicion; it must lead to belief. (12 C. J. 639, notes 90–95; *Pryor v. Bank of America,* 240 Ill. 100, 88 N. E. 288.)

The deeds to plaintiff to the two lots cannot be avoided or set aside by respondents unless it is shown by clear and con-

vincing testimony that the grantee was privy to the fraud. (C. S., sec. 5429; *Evans v. Sparks,* 170 Cal. 532, 150 Pac. 372.)

While transactions between relatives are subject to rigid scrutiny, and the fact of relationship is to be considered with other evidence as to the intent with which a transfer is made, yet relationship is not of itself a badge of fraud. (27 C. J. 495; *Gray v. Galpin,* 98 Cal. 633, 33 Pac. 725; *Evans v. Sparks, supra; Clark v. Else,* 21 S. D. 112, 110 N. W. 88; *Hutcheson v. Richmond Sav. Bank,* 129 Va. 281, 105 S. E. 677.)

Hays, Martin, Cameron & Hays, for Respondents.

"If a debtor, for the purpose of covering up property from the claims of creditors, conducts business in the name of his wife, child, or other third person, when the business is in fact his own, he perpetrates a fraud upon his creditors, and they may reach and subject to the payment of their claims the property acquired or used by him in such business." (20 Cyc. 406; *Ansorge v. Barth,* 88 Wis. 553, 43 Am. St. 928, 60 N. W. 1055; *Nickle v. Emerson etc. Co.* (Ark.), 13 S.W. 78; *Robinson v. Brems,* 90 Ill. 351; *N. Fass v. Rice Bros. & Co.,* 30 La. Ann. 1278, 1280.)

Findings of fact made by a trial judge who had the benefit of observing the demeanor of witnesses upon the stand and of listening to their testimony will not be disturbed because of conflict if the evidence in support thereof, if uncontradicted, would be sufficient to sustain such findings. (*Independent Placer Min. Co. v. Knauss,* 32 Ida. 269, 181 Pac. 701; *Snowy Peak etc. M. Co. v. Tamarack etc. M. Co.,* 17 Ida. 630, 107 Pac. 60; *Panhandle Lumber Co. v. Rancour,* 24 Ida. 603, 135 Pac. 558; *Darry v. Cox,* 28 Ida. 519, 155 Pac. 660; *Jensen v. Baumgarner,* 28 Ida. 706, 156 Pac. 114; *Jones v. Vanausdeln,* 28 Ida. 743, 156 Pac. 615.)

BUDGE, J.—This action was brought by appellant to quiet title to certain real property in Boise. The complaint alleged title in appellant and also that respondent, Boise City Na-

tional Bank, claimed an interest in such property by reason of its judgment against appellant's father, Guy E. Matthews, and that the respondent sheriff was threatening to sell the premises under execution issued on such judgment. Appellant prayed that the title to the property be quieted in him and that the sale be enjoined, or in the event the sale was held, that it be set aside. The answer of respondents denied ownership in appellant and alleged that appellant's father was the real and true owner. Respondents also filed a cross-complaint against appellant and his father, in which it was alleged that the father was a middle-aged man and for twenty years had been a contracting carpenter in Boise, buying lots and building houses on them for sale; that appellant was a young, inexperienced, unmarried man, approximately twenty-one years of age, living with his father; that since the summer of 1920 the father, who was insolvent, for the purpose of concealing his assets from his creditors, had been transacting part of his business in his son's name; that respondent bank had procured a judgment against the father, had caused execution to be levied upon the premises in question and had purchased the same at sheriff's sale; it was also alleged that the father had bargained for and purchased this property and paid for it, but had caused the conveyance to be made to his son for the purpose of concealing his assets and to hinder, delay and prevent his creditors from collecting their claims. Respondent bank prayed that title be quieted in itself, subject to the rights of redemption. The material allegations of the cross-complaint were denied by the answer of the father and son, except that it was admitted that the father was carrying his bank account in the name of his son.

Upon the issues thus framed the cause was tried to the court sitting without a jury and judgment was awarded in favor of respondent bank in accordance with the prayer of its cross-complaint. Appellant thereafter made a motion for new trial, which was denied. From the judgment and from the order overruling the motion for new trial this appeal is prosecuted.

Appellant specifies and relies upon twenty-five assignments of error. Without questioning their sufficiency, the assignments present but one question for determination and that is whether or not the evidence is sufficient to support the findings and judgment. We shall not attempt to discuss the evidence in detail. Suffice it to say that it appears from the record that appellant's father, at the time of the trial was and for some time prior thereto had been insolvent; that respondent bank, to whom he had been indebted for a long period of time, was one of his judgment creditors and that this action was brought by the bank for the purpose of subjecting certain property standing in the name of appellant to the payment of the bank's judgment. It also clearly appears that the father deposited large amounts of his individual money in the name of his brother, Claude Matthews, and that he drew checks against said deposit; that he made many deposits in both large and small amounts in the name of his son; that his son signed checks in blank and that he (the father) filled in the checks and drew out of such deposit various amounts which he used in carrying on his business. It is also clear that the business carried on by the father and son was conducted in this manner in an attempt to cover up and conceal from the father's creditors property owned by the father. At the time of the trial appellant was but a young man while the father was a man past middle life. The son was inexperienced in business matters while the father had spent many years in buying and selling real estate, building and contracting. It is unreasonable to suppose that the father would become a mere employee of the son and as such handle the various and numerous transactions involving considerable sums of money, completing all of the transactions, buying real estate, dictating the terms and having the title placed in the name of the son without the latter's knowledge and without the son knowing the parties or the names of the parties from whom the same was purchased, purchasing building materials in the name of the son and agreeing to prices and discounts, admitting to parties that he was doing business in his son's name on account

of his creditors, contracting the building of houses in his son's name, the persons with whom such contracts were made not even recognizing the son in the transactions and the son having no connection therewith; drawing checks against the son's account, treating the same as if it were his own; selling and disposing of property standing in the son's name exactly as though it stood in his own name, and then be heard to say that he had no other interest than that of an ordinary employee.

The rule of law applicable to the facts as disclosed by the record in this case is found in 27 Corpus Juris, p. 462, sec. 99, where it is said:

"If a debtor, for the purpose of covering up property from the claims of creditors, conducts business in the name of his wife, child, or other third person, when the business is in fact his own, he perpetrates a fraud upon his creditors, and they may reach and subject to the payment of their claims the property acquired or used by him in such business."

As was said in the case of *Fass v. Rice Bros. & Co.*, 30 La. Ann. 1278, 1280:

"There seems to be a popular notion, and it has crept into the profession, that a man has but to pretend to carry on business in another's name, while he is actually sole owner and manager, to succeed in screening his property from the pursuit of his creditors. There is really no excuse or justification of this concealment, and the practice will not find encouragement from the manner in which we deal with it."

In 12 R. C. L. 509, sec. 38, the rule is laid down as follows:

"A man cannot, if he owes debts, devote his capital, industry or credit to the accumulation of property to be held by some third person, for his own use or that of his family, to the exclusion of his creditors, nor can he transfer property to another to be held in trust for him. In such case he remains the real owner and the property may be subjected to the payment of his debts, and the effect is the same though the transaction be dignified by the cloak of legal proceedings. In such cases the law intervenes and goes behind the fraudulent and secret transaction, and subjects the property

or trust funds to the payment of just and legal demands.''
To the same effect, see *Ansorge v. Barth*, 88 Wis. 553, 43
Am. St. 928, 60 N. W. 1055. In the case of *Keeney v. Good*,
21 Pa. St. 349, 355, the court, in considering an arrangement
to buy property on the wife's credit, and have it paid for by
the husband as her agent, said it ''is too unsubstantial and
too easily shammed to be at all satisfactory. All these things
can be done by mere words, and words are but breath.''

The trial court found that the real estate was bought and
paid for by the father, although the deed was made to the
son; that the son and father were guilty of fraud; that they
had conspired together to defeat the father's creditors and
that the property levied on was in reality the father's. We
are convinced from an examination of the record that there
is ample proof to support these findings and the judgment.

From what has been said it follows that the judgment of
the lower court should be affirmed, and it is so ordered.
Costs are awarded to respondents.

William A. Lee, C. J., Wm. E. Lee, J., Babcock and Baum,
District Judges, concur.